*341
 
 Overton, J.
 
 *
 

 This was an ejectment brought by the defendants in error against the plaintiff, to which he pleaded the general issue, and under the act of the 18th of October
 
 *342
 
 1813 c 22. gave notice that he meant to claim on the trial the value of improvements made on the land; and under the same act, the defendants gave notice that they meant, to claim for mesne profits.
 

 The notice on the part of the plaintiff was general ; it contained no specification of the improvements, for which compensation would be asked.
 

 On the trial, the defendants produced a grant from the State of North Carolina dated on the 29th July 1793, and regular mesne conveyances to themselves.
 

 The plaintiff claims the same land by virtue of a grant from the State of Tennessee to Clark dated 26th of August 1808. After reading of this grant, the plaintiff disclosed the following case. A deed from John R Rogers and John Smith to the plaintiff dated 14th Nov. 1809 was produced; and also a registered copy of a writing given by Clark to Rogers of the same date, purporting to be a release of all his right. This instrument of writing was not under seal. It was excepted to, and rejected by the court, but no exception taken to the opinion of the court on this ground. The plaintiff also offered in evidence a deed from Clark to John R. Rogers dated September 5th 1811.
 

 The plaintiff on the trial offered parol evidence of the value of his improvement, which was objected to; on the ground that the plaintiff had not shown such color of title as was contemplated by the act. The court sustained this objection and rejected the testimony, and there was a verdict for the defendants in error, with nominal damages, as usual in ejectment. To the opinion rejecting the testimony to show the value of improvements, the counsel for the plaintiff excepted, and the correctness of this opinion is now to be ascertained.
 

 On the part of the plaintiff it has been insisted—
 

 First. That the court erred in rejecting the release from Clark to Rogers.
 

 Second. That if the court was correct in this, still the evi
 
 den
 
 ce showing the value of improvements, ought to have been received, because there was sufficient color of title without that release.
 

 On the other side, the arguments of counsel have assumed this shape.
 

 First, the court will look to the whole record, and though the circuit court may have erred in the ground of its decision, set it such decision be correct for other reasons, this court will not reverse.
 

 Second the plaintiff did not show such a case as to make
 
 *343
 
 color of title, and therefore not entitled to recover for improvements under the act.
 

 Third. The act of 1813 C. 22 is unconstitutional, and therefore void—
 

 Fourth. The notice of a claim for improvements, is too general to found a recovery upon.
 

 The first point made by the plaintiff's counsel, not having been excepted to, must be considered as waived in the court below, and it is too late to look into it now, but if necessary, it would seem that there was no error in that respect. The instrument was not a deed, and therefore not required by law to be registered, and a registered copy could not be read.
 

 In relation to the second position assumed by the plaintiff's counsel, the court is of opinion, there was sufficient color of title, independent of the release, shown on the part of the plaintiff in error, to enable him to sustain a recovery for improvements. The nature of the claim to be exhibited by a person claiming the value of improvements, has been very properly likened to that which is necessary to found a claim, under the statute of limitations.
 

 In order to have a complete view of the law arising in the case, it is necessary to recur to all the acts on the subject of improvements. The first passed in 1797 Hayw. Rev. 237 c. 43, s. 3. “ That any grantee or other person claiming by deed of conveyance founded upon a grant, hath by virtue thereof obtained peaceable possession of any tract of land, and shall at any time thereafter, be dispossessed by due course of law, or otherwise put out of possession, without his, her, or their consent, first had and obtained—that then and in that case, the person so dispossessed, shall be entitled to recover at common law, from the person to whose use the dispossession was so made, the value of improvements which, he, she, or they may have made on the said land.’' The 4th sect. of this act is explanatory of the act of limitations of seven years possession, so remarkable for having excited the attention and employed the talents of the first legal characters in the state, in endeavors to fix its construction. By comparing these two sections together, it is perceived, the legislature uses the same language, in relation to the predicament in which the possessor must be placed, to entitle him to claim for improvements in one case, and the land itself in the other. Perhaps it may appear on investigation, that as the legislature intended different effects, a difference may arise in legal presumption between the two cases, as in the one a presumption
 
 of
 
 fact in relation to the
 
 bona fide
 
 acquirement at the paper title, in the other a presumption of law on that
 
 *344
 
 point. Upon this part of the case however, no opinion is intended to be intimated, further than a remark, that this, in the opinion of the court is the only possible difference that can exist, between the claimants contemplated by the 3rd & 4th sections of this act.
 

 The next act passed in 1805, Hayw. Rev, 372, chap. 42. It is in these words, “ that any person in possession of any land under patent, grant, or lawful entry, and shall at any time be dispossessed by due course of law, or otherwise put out of possession, without his, her or their consent first obtained, in that case the person so dispossessed, shall be entitled to receive from the person to whose use such dispossession was so made, the value of the improvements which he, she, or they may have made on said land ; and the said land shall be and remain a fund for the payment of the judgment and cost that may be recovered in any action that may be brought for the value of such improvements made thereon ; and said land shall always be bound for the payment of such judgment and cost, notwithstanding it may be conveyed to some other person by him, her, or them, who made said recovery as aforesaid.”
 

 The next act on this subject is the act of April 1809, c. 31, s. 11, “ That where any person hath seated him, her, or themselves, on any spot of land, and hath entered the same with an intent to secure a title therefor, and said land had actually never been granted, or surveyed at the time such entry was made, and afterwards was taken by an older entry, then and in such case, the person so seated on said land, shall be entitled to receive pay from the rightful owner thereof, to the value of his improvement."
 

 In this state of things, the case of Ship’s heirs presented itself to the supreme court, Cooke’s Rep. 282. The court was then full,and to the reasoning in that case, this court adheres.
 

 The act
 
 of October 1813, c. 22, uses this language, " that hereafter, when an action of ejectment shall be brought in any of the
 
 courts
 
 of this state, where the tenant in possession or defendant
 
 in
 
 such suit, shall have color of title to the premises in dispute, or any part thereof, either by grant, deed of conveyance founded upon a grant, or entry for the same lying in any part of this state, or claim by occupancy and pre-emption south of French Broad and Holston,” &c. provides that the defendant may give notice that he means to claim the value of his improvements on the trial; and that the lessor of the plaintiff may also give notice, that he means to claim the amount of the mesne profits, “and it shall be
 
 *345
 
 the duty of said court upon the trial of such action of ejectment, to permit such defendant or tenant in possession to prove to the jury empannelled to try such ejectment, every thing appertaining to the nature and value of his improvement on the land in dispute,” &c. “ provided that no improvement shall be taken into the valuation and allowed for, that shall have been made after the execution of the original writ in such suit, or after the lessor or lessors of the plaintiff, his or their agent or attorney, shall have served said defendant or tenant in possession with a written notice that he or they claim title to the said land, specifying in the notice the nature of his claim; neither shall any mesne profits be valued and recovered, unless such as shall have occurred after the commencement, of suit, or notice given as aforesaid.
 

 It was on this act the proceedings in the case before the court were bottomed.
 

 None of the prior acts on the same subject are repealed. The grounds and principles of recovery of course remain the same. The act only affords another, or an additional remedy in the cases previously pointed out and reiterated in this act.
 
 W
 
 here the claim is by deed, as in the instance before the court, the language used is the same with that employed in the act of 1797, and in the act explanatory of the act of limitations. The same construction must therefore obtain. Ten. Rep. 286, 353
 
 ;
 
 and in that view of the subject, there was sufficient
 
 prima facie
 
 color of title, beside the paper purporting to be a release. The court certainly erred in rejecting this testimony on the ground it proceeded on.
 

 The next view of the subject which presents itself, is that growing out of the third position, assumed by the defendants’ counsel.
 

 In point of fact, courts presume that every act of the legislature is constitutional. In deference to the legislative organ of the government, this presumption necessarily arises. Legislators are under the same obligation to observe the provisions of the constitution, that is incumbent on this court. But so long as the judiciary is a separate and independent branch of the government, it must result, that if a legislative act should be plainly and obviously opposed to the constitution, the judiciary is incapable of observing the injunctions of the law and disregarding the constitution at the same time. One or the other must be dropped, and as the constitution is paramount to any law the legislature can make
 
 *346
 
 in opposition to it, the court is left without any alternative. All the organs of the government are bound by the constitution
 
 ;
 
 it is the letter of attorney or authority under which all must act. So far as that authority is exceeded, the act is void; but this excess should be plain and obvious, for it is the duty of courts to reconcile the provisions of an act of the legislature, with the constitution, if by any means it can be done.
 

 With these impressions the act of 1813 will be examined. Previous acts on this subject having been formerly under review in the case of Shipp’s heirs, renders it unnecessary to examine them any further.
 

 It is objected to a recovery for improvements in this case, that the mode of obtaining redress pointed out in the act of 1813, cannot be observed, without violating the constitution. This part of the subject as well as every other has been ably discussed on both sides. It has been clearly shown, that the method pointed out by the act might prove embarrassing and difficult in the extreme. It would effectually put an end to the consolidation of ejectment causes, which has been found highly advantageous in practice, in preventing litigation, expence, trouble, and less of time by courts of justice.
 

 Where there are forty or fifty causes in ejectment, depending on one title, and each defendant giving notice that he meant to claim for improvements, it would never do to consolidate, so as to try title and all the claims for improvements and mesne profits, at once.
 

 But this court disclaims any power of judging of the expediency of legislative acts. The power of the legislature is sovereign in this respect.
 

 The 20th section of the bill of rights is the part of the constitution principally relied on, " that no law impairing the obligation of contracts shall be made." A grant from the state, is a contract between the state and grantee, 6 Cranch 136, Fletcher vs. Peck, It is a contract executed “ and contains obligations binding on the parties.” The state in parting with its interest engages that the grantee shall hold and enjoy the land granted, in his own right, and as his own property, subject to such taxes and burthens as had been customary for the good of society, before the formation of the constitution. In the same case it is said in page 135, " it may well be doubted whether the nature of society and government does not prescribe some limits to the legislative power; and if any be prescribed, where are they to be found,
 
 *347
 
 if the property of an individual, fairly and honestly acquired may be seized without compensation.
 

 The authority of judge Patterson is to the same effect, and to be found in the case referred to at the bar by the defendants counsel 2 Dall. 310 where he observes "that the right of acquiring and possessing property, and having it protected is one of the natural, inherent, and unalienable rights of man.”
 

 Therefore any legislative act, that impairs the obligation arising from the grant, that the grantee shall have the exclusive use and enjoyment of the property granted, subject to the limitations above mentioned, is unconstitutional and void. By this principle, which is believed to be a sound one, the act of 1813 will be tested. Previously to the constitution and consequently to the passage of the act in question, the principles of equity afforded relief for improvments made on land by a person honestly acquiring it, believing the land to be his own.
 

 But he must have been a
 
 bona fide
 
 purchaser. His claim for improvements must be founded in the idea of unavoidable mistake, arising from the usual perplexity of land titles, Kaims Prec. Equ. 104, 5, 6, and he must be a
 
 bona fide
 
 possessor.
 

 The idea that the state authorises a man to make an entry in the surveyors book, for the land of another, knowing at the same time that such other person has a title to it; to make expensive improvements on the land, and under these circumstances, sustain an action for the value of the improvements, is subversive of the clearest principles of natural right, in relation to property, and consequenly of the constitution, which guarantees to every man the exclusive use of his own property. The authority of the case of Shipp’s heirs is decisive on this ground. Beside, that case also decided, that without infringing the rights of property, the acts on the subject of improvements could not be carried any farther than the principles of equity had previously authorised. To go further would be impairing the obligation which the government had imposed on itself in granting the land—to protect the grantee in the exclusive use of the property granted. It hence, results, that the act of 1813 must be construed on the same principles with those previously made on the same subject, and in such a manner as to avoid an infringment of the fundamental principles of society and of the constitution. That the legislature under these fundamental restrictions was competent to point out the mode in which the improver should seek redress, no one can doubt.
 

 
 *348
 
 In this view there can be no ground for the constitutional objection as it respects the first part of the act. It is the latter part, or that which falls within the proviso, which deserves more attentive consideration. Nor would it seem upon a nearer view that any doubt ought to exist respecting the constitutionality of all that part of the proviso which precedes the word
 
 neither
 
 in the third line from the end of the first section.
 

 It does not follow, because the legislature has said, " that no improvement shall be taken into the valuation and allowed for, that shall have been made after the execution of the original writ or service of written notice of the plaintiff's claim &c.” that allowance shall under all possible circumstances be made for all improvements before that time-That point is left as it was before the passage of the act.
 

 " Neither shall any mesne profits be valued and recovered unless such as shall have occurred after the commencement of the suit. or notice given as aforesaid.”
 

 To construe this sentence as an implied repeal of the antecedent law on the subject, would be a manifest violation of the constitution, by impairing the contract made with the state. The use and enjoyment of land consist in its profits or products. If one man use the property of another without his consent, he is bound to make compensation for it, and the state is under an obligation to afford the means of redress. In refusing redress, a man is deprived of his property without his consent, not for public purposes, and without compensation.
 

 Beside, the contract of the state in granting the land is impaired, by permitting one person to take possession of the land of another without his consent, and knowing it to be his property, and bring him in debt for such improvements as he may think proper to make. Thus a person may be indirectly deprived of his property without his own consent, and without compensation.
 

 It certainly could not have been the intention of this act, to deprive the owner of any redress for mesne profits until he had given written notice of his claim.
 

 The government, before granting the land had it marked out, and set apart by metes and bounds. In contemplation of law a person's land is as clearly ascertained,as his personal property. If a man take and detain my slave, can it be said the legislature is competent to pass a law, depriving me of all compensation for the injury I have sustained in the deprivation of the property, until written notice be given that the property is mine; or notice that compensation is meant to be claimed?
 
 *349
 
 If so, any other imaginable restriction can be imposed, leading to an entire deprivation of the property.
 

 When this property was granted, it became the property of the individual to whom it was granted, subject to such customary taxes or demands, as the good of society required.
 

 To impose new and unheard of restrictions in the use of this property would certainly be impairing the obligation of the contract arising from the grant. The constitution secures me in the exclusive use of the property, how is this effected, if the state making the grant, can afterwards tell an individual, you may make any entry for this man’s land, settle on it, use it, and make expensive improvements at his cost, without his consent, and he shall not only be bound to pay you the value of all improvements you may make, but he shall receive no compensation for the use of his land, until he give you written notice of his claim, specifying the particulars thereof.
 

 The owner of property has a right to make such disposition of it as he thinks proper. It may be more to his advantage, to suffer it to remain covered with timber, than to clear and cultivate it.
 

 The statute contains no express repeal of the former law, allowing compensation for mesne profits; the act does not necessarily repeal the law affording redress in such cases, and as such repeal would seem to intrench on constitutional provisions in the use of property, I cannot suppose the legislature intended such repeal, any more than it can be supposed that it intended the tenant in possession should under all circumstances, be allowed for improvements previously to the time of the service of the writ, or written notice.
 

 It is believed both these points are left in the same state as they were before the passage of the act. The act is constitutional and obligatory to the extent of its provisions, but beyond that, does not operate as an implied repeal of antecedent remedies.
 

 As much argument has been employed at the bar, respecting the rule of evidence to be adopted for the recovery of compensation for improvements, and as an opinion has been formed on this ground, it may be well to state the result of the deliberation of the court.
 

 From the language used by the legislature, it seems apparent, that all circumstances respecting the improvement should be taken into consideration ; the language used is, " that the court shall permit the defendant to prove every thing appertaining to the nature and value of his improvement.”
 

 I cannot suppose the legislature designed that the defe
 
 *350
 
 ndant should be allowed for the price of his labour under all circumstances. It is presumable that the legislature meant to make such equitable provision for the defendant, as had been usual in a court of equity previous to the formation of the constitution, by affording a more expeditious remedy for such a debt or demand, as would arise
 
 ex equo et bono
 
 under such circumstances. Kaims, in his principles of equity lays down the rule in this respect (viz.) where a person takes possession of land
 
 bona fide,
 
 believing it to be his own, and in that state of mind makes ordinary improvements, he shall be allowed the value of ameliorations, not the value of the labour bestowed on the land.
 

 The law created a debt, to the amount of the ameliorations, upon the principle that it would be unjust that the real owner should receive the benefit of anothers labour for nothing, when acting
 
 bona fide,
 
 not knowing from the usual complexity of land titles, but that the land was his own.
 

 A demand for the increase in the value of the land arising from such improvements, under such circumstances, was considered as much a debt due from the real owner, as that the property in the land belonged to him.
 

 There was as much justice and consistency with the constitution in enforcing the payment of such a debt, as compelling the delivery of the possession of the land to the real owner. The rational rule therefore seems to be, not the price of labor, but the amount of increase in value of the land, produced by those improvements. This amount, the real owner ought to pay, he being benefited to that amount. To adopt a different rule would be an obvious violation of the constitutional rights of property, which cannot be presumed in deference to the legislature. For instance, a person might own a piece of wood land near a large town, where the wood and timber might be worth four times as much as the land without it, would sell for.
 

 Can it be believed that the legislature intended an improver, as usually termed, shall be paid for clearing and burning up the timber and wood on this land ? Yet such would be the consequence of estimating the value of labor simply. Further, the rule contended for would subject the property of the real owner to the judgment, whim, or caprice of the tenant in possession, in relation to these improvements, and thus ruin and destroy his property. What the improver might consider beneficial, would in the opinion of all indifferent men be viewed as a real injury. Such a construction cannot obtain, consistent with the interests and constitutional rights of property.
 

 
 *351
 
 When,therefore, the legislature speaks of “ what improvements the possessor may have made on the land,” we are constrained to believe that it meant the value of such improvements to the real owner. This is the obvious import of the expression
 
 improvement,
 
 and the most cogent reasons concur in rejecting any other interpretation of its meaning.
 

 The fourth and last point, made by the defendants now presents itself.
 

 Agreeably to the previous acts on the subject of improvements which are unrepealed, it was necessary to institute an action at law for the value of improvements ; a declaration was to be filed, stating the nature and kind of improvements.
 

 It is believed by the court,that the argument of the defendants’ counsel on this part of the case is correct. The notice is short and in general words, showing only that the defendant in ejectment meant to claim for the value of improvements, without specifying the nature, kind, or sort of improvements. Upon the notice given, the act designed to authorise a recovery ; it was intended as a substitute for the remedy by action at law, when a party might think proper to avail himself of it. There is the same necessity, that in substance, it should contain as much particularity, as the declaration at law in such a case.
 

 It is to be the foundation of a recovery in the one case as well as the other ; and precisely the same reason that the opposite party should be apprised of the nature and extent of the demand in both cases
 
 ;
 
 and this is conformable to the principles of law in analogous cases of set off, Gold. Ed. Esp. N.P. vol. 1 part, 2d. 81.
 

 It has been urged that the second section of the act of 1813 is unconstitutional, in preventing the lessor of the plaintiff, from taking out a writ of possession after recovery, until he shall deposit such sum of money as the jury may find against him for improvements. The court cannot see it in this light. Before the passage of any act by the legislature on the subject, a court of equity would restrain the lessor in ejectment from taking possession, until by the perception of the rents and profits, he should have indemnified for the ameliorations. This is silent as to the accountability of the tenant in possession for rents and profits after the judgement ; the law therefore, is left as it stood before, and he will be obliged to account. In this respect therfore, so far from the act being unconstitutional, it is perfectly coincident with the principles of equity ; those principles would compel a delivery of possession after the rents and profits shall have indemnified the possessor to the full amount of his verdict
 
 *352
 
 and judgment. It is worthy of remark, that this act does not authorise an execution to issue for any balancc or sum that may be found in favor
 
 o
 
 f the tenant, for improvements. No doubt the legislature intended that he should hold possession until he should be paid by the rents and profits, being according to Ld. Kaim and all the equity writers on this subject, the only natural way of making compensation.
 

 With this view and understanding of the act, it may stand with the constitution in every point, though it cannot operate as an xpress, nor implied repeal of former laws.-It was only intended to afford a new mode of redress in the specified cases in the act, which were notprovided for by former laws.
 

 Consistently, then, with legal principles, a notice of claim for improvements under this act, should contain the necessary averments, as, the value of the improvements made, the kinds particularly—as frame or log houses, barns—cleared ground &c.
 

 It should also state the nature of the claim, as by deed in fee,
 
 having bona fide
 
 made those improvements, believing the land to be his own at the time he acquired his title, and during the time those improvements were made. Thus the matter will be fairly before the court and jury.
 

 It is the opinion of the court, though the circuit court erred in rejecting the testimony on the ground of the want of color of title, still on the ground of the substantial defect in the notice, the court could not have rendered judgment for the defendant for the value of improvements. Therefore to reverse would be useless; consequently the judgment must be affirmed.
 

 *
 

 There being at this time no other member of the court.