LAMAR v. MINTER.

1. A patent for land issued to Sheppard S. Johnson, and a deed for the same land, was made by Spencer S. Johnson—Held, that it was admissible to prove, that the patentee was known when the patent issued, as Sheppard Spencer Johnson, and that the two names were intended to indicate the same person.

2. A conveyance by deed, of "the south part of the east half of the north east quarter of section 27, township 16, and range 12, containing 40 10-100 acres," is not a conveyance of the south half of the half quarter section, without reference to quantity, but is a conveyance of the number of acres mentioned, of the south half of the half quarter section. This construction cannot be controlled by the patent for the same land, which describes it as containing 80 20-100 acres, nor is parol evidence admissible to show that the entire south half of the half quarter was intended to be conveyed, though chancery, in a proper case might reform the deed.

3. The declaration of one owning land on the opposite side of a line, insisted on as the proper boundary, is not admissible to prove the boundary, it not being shown that his testimony could not be obtained.

4. Under the act of 1836, "for the relief of tenants in possession against dormant titles," to entitle the tenant to compensation for permanent and valuable improvements, it is sufficient that his occupancy was bona fide, under color of title. And for the purpose of showing that his occupancy was adverse, he may prove by parol, that it was the intention of the plaintiff to sell, and of the defendant to purchase, the land in controversy, though by mistake omitted in the deed.

Writ of Error to the Circuit Court of Dallas. Before the Hon. Geo. Goldthwaite.

This was an action of trespass at the suit of the defendant in error, brought as well to try titles to the east half of the

north east quarter of section twenty-seven, in township sixteen of range twelve, situated in the county of Dallas, as to recover damages for its occupancy. The defendant by way of plea, suggested his adverse possession under the statute—also that the title of the plaintiff was dormant, that he had made valuable and permanent improvements, &c. He also pleaded a former recovery, and the plea of "not guilty." The plaintiff demurred to the plea of former recovery, and his demurrer being sustained, the cause was tried on the issues of fact—a verdict returned in favor of the plaintiff for so much of the land sought to be recovered as is embraced within the following boundaries, viz: "commencing at the east end of a line east and west, which divides the east half of said half quarter section into two equal parts running thence, on the eastern boundary of the same, south forty-two feet, thence west to the western boundary line of said half quarter section, thence north on said western boundary line forty-two feet, and thence east to the place of beginning;" and also $140 damages. Judgment was rendered accordingly.

From a bill of exceptions sealed at the defendant's instance, it appears—1. That the plaintiff gave in evidence a patent from the United States for the land described in the declaration, dated the 21st January, 1834, to William Johnson and Sheppard S. Johnson, for the east half of the north east quarter of section twenty-seven in township sixteen and range twelve, containing 80 20-100 acres, being the quarter section which embraces the land in controversy. He also offered in the same connection a duly proved deed, by which William Johnson and Spencer S. Johnson conveyed to the plaintiff the land described in the declaration, and then proposed to show that the grantor, Spencer S., was, when the patent issued, known as Sheppard Spencer Johnson, and that the two names were intended to indicate the same person. To all which defendant objected; but his objection was overruled, and the evidence permitted to go to the jury.

2. Previous to the institution of this suit, the plaintiff had recovered, and was in possession of the north half of the quarter section described in the declaration, and the defendant was, when the action was commenced, in possession of

Lamar v. Minter.

the south half of the same.   Defendant introduced a deed duly recorded, by which the plaintiff conveyed to the defendant " the south part of the east half of the north-east quarter of section twenty-seven, in township sixteen, and range twelve, containing forty 10-100 acres ;" and then proposed to prove by the plaintiff's declarations, and other parol evidence, that by the " south part," the plaintiff intended to convey the entire south  half quarter to the defendant, and that the south half contained forty 10-100 acres.   To the admission of the plaintiff's declarations, and other evidence explanatory of his intentions and the effect of the deed, the plaintiff objected, and his objection was sustained.

3.  It was shown on the part of the defendant, that some twenty years previous to  the trial,  a line had been run from east to west across the centre of the section by the county surveyor.   The question was, whether this was the true line. To show its correctness, the defendant  proved by witnesses who resided on each side of it, that they had recognized it as the true line of division ; and then offered to prove that one Murphy, who lived " on the opposite side of the line," said it was correct, though it was not shown that Murphy was dead or out of the jurisdiction of the court.   But upon the objection of the plaintiff, the evidence as to Murphy's declarations was excluded.

4.  Under the suggestion filed, the defendant offered to prove that he had  made valuable and permanent improvements within three  years, &c.   But this evidence was rejected on the ground that there  was no evidence other than the deed and the possession under it, to show that the defendant had had adverse possession.

5.  The defendant  prayed the court to charge that the words " south part," in the deed from the plaintiff to the defendant, were the same as " south half," and so operated as to convey the entire half of the half quarter section, although it might contain more than forty 10-100 acres.

6.  The defendant also prayed the court to charge, that the patent which describes the half quarter section as containing eighty 20-100 acres, in connection with the deed from the plaintiff to the defendant,  designating forty 10-100 acres as

the quantity of the "south part," must be construed to indicate the intention to convey a half of the half quarter section, although the half quarter contained more than forty 10-100 acres; which charge was also refused. The several rulings of the circuit court were excepted to, and are now presented for revision.

R. SAFFOLD and G. R. EVANS, for the plaintiff in error, to show that the deed under which the defendant below claimed, conveyed the *south half* of the half quarter section, without reference to quantity, and the parol evidence was admissible, cited 13 Vin. Ab. 79, pl. 24; Jackson v. Barringer, 15 Johns. Rep. 471; Jackson v. Moore, 6 Cow. Rep. 706; Powell v. Clark, 5 Mass. Rep. 355; Jackson v. Loomis, 18 Johns. Rep. 81; 4 Kent's Com. 466; Smith v. Prewit, 2 Marsh. Rep. 158; Smith v. Norvells, 2 Litt. Rep. 159; Waterman v. Johnson, 13 Pick. Rep. 261; Dorsey v. Hammond, 1 H. & Johns. Rep. 201; Davis v. Batty, Id. 264; Thompson v. Brown, Id. 335; Belt v. Miller, 4 Har. & Johns. Rep. 536; Hembree v. White, 2 Overt. Rep. 202; Baker v. Talbott, 6 Monr. Rep. 182; Ralston v. Miller, 3 Rand. Rep. 44; Bass and Carter v. Gilliland's Heirs, 5 Ala. Rep. 761.

The possession of the defendant was adverse, and under the statute he is entitled to be compensated for permanent and valuable improvements made in good faith. Jackson v. Scoonmaker, 2 Johns. Rep. 230; Jackson v. Camp, 1 Cow. Rep. 609; Hollinger v. Smith, 4 Ala. Rep. 367; Tillotson v. Doe ex dem. &c. 5 Ala. Rep. 407; Clay's Dig. 320, § 47; Winslock v. Hardy, 4 Litt. Rep. 274; Vorhees v. White's Heirs, 2 Marsh. Rep. 27.

Where the intention of the parties to a deed can be discovered, the court will give effect to it, if consistent with law. Bridge v. Wellington, 1 Mass. Rep. 119; Wallis v. Wallis, 4 Id. 135; Marshall v. Fisk, 6 Id. 24; Pray v. Peirce, 7 Id. 381; Litchfield v. Cudworth, 15 Pick. Rep. 23.

The declarations of adjacent proprietors of land are admissible in a controversy between other persons upon a question of boundary. Jackson v. Hubble, 1 Cow. Rep. 613.

To show that it was not admissible to prove by parol testimony that Sheppard S. and Spencer S. Johnson were in-

tended to indicate the same individual, they cited P. & M. Bank v. Borland, 5 Ala. Rep. 531.

Where parties have agreed upon the boundaries of their lands, and possession has been taken and improvements made upon the faith of such agreement, it shall be binding; and it is competent to prove the facts by parol evidence. Jackson v. Bowen, 1 Caine's Rep. 361; Jackson v. Vedder, 3 Johns. Rep. 8; Jackson v. Dieffendorf, 3 Johns. Rep. 269; Jackson v. Ogden, 7 Johns. Rep. 245; Rockwell v. Adams, 6 Wend. Rep. 467; Tarrant v. Terry, So. Ca. Rep. 239.

Acquiescence for a long time even in an erroneous location, will conclude the party making or acquiescing in it. East India Co. v. Vincent, 2 Atk. Rep. 82; Lusk v. Druse, 4 Wend. Rep. 313; Buckhanan v. Stewart, 3 H. & Johns. Rep. 329; Houston v. Mathews, 1 Yerg. Rep. 116; Wilson v. Hudson, 8 Id. 398; Boyd v. Graves, 4 Wheat. Rep. 513; McCormick v. Barnum, 10 Wend. Rep. 104; Kip v. Norton, 12 Wend. Rep. 130; Dibble v. Rogers, 13 Wend. R. 536.

G. W. GAYLE, for the defendant in error.

COLLIER, C. J.—We can conceive of no objection to the admission of the evidence to show that Sheppard S. Johnson, one of the grantees in the patent, was named Sheppard Spencer Johnson, and that he is the same person who executed the deed under which the plaintiff claims, by the name of Spencer S. Johnson. This testimony does not contradict either the patent or the deed. It shows nothing more than a transposition of the first and middle name—explains an ambiguity, if indeed it be one, which at most is latent—removes a seeming discrepancy—makes the deed harmonize with the patent, and thus traces to the plaintiff a complete title from the United States. In the absence of proof, we are by no means sure that the similarity of the names is not such, as to warrant the inference that they were intended to indicate the same individual; but as this question does not necessarily arise, we will not consider it. See 2 H. & McH. Rep. 155; 2 H. & Johns. Rep. 53, 366; 3 Id. 469; 1 H. & Gill's Rep. 441.

The law does not require any technical or precise form of

words in the designation of property conveyed by writing. But the intention of the parties to be collected from the whole deed, if not repugnant to law, must prevail; if, however, there is any doubt about the matter, the construction must be most favorable for the grantee, and strongly against the grantor. 2 H. & McH. Rep. 523; 2 H. & Johns. Rep. 112; 3 Id. 329; 4 Id. 228; 3 Mass. Rep. 352; 6 Id. 24; 7 Id. 381; 15 Pick. Rep. 23; 8 Johns. Rep. 394. Under the influence of these principles, we should have no difficulty in concluding that by the "south part" of the half quarter section, was meant the south half, without reference to quantity; but it is insisted that the additional words, viz: "containing forty 10-100 acres," prescribe the extent of the lands conveyed, and that the defendant is entitled to no more. It has been said that the meaning of a deed, and what are the boundaries of the land it proposes to convey, are questions of construction for the court; but the locality of the premises must be determined by the jury. 1 Dev. & Bat. Rep. 425; 8 Johns. Rep. 495. So a clear general description of the premises in the deed, is not controlled by any subsequent expressions of doubtful import in respect to certain particulars. 2 N. Hamp. Rep. 175. But words of general description may be limited and rendered certain by terms more precise and particular. 5 Id. 1; 14 Pick. Rep. 128. In Bott v. Burnell, 11 Mass. Rep. 163, it was held that general words descriptive of the land conveyed, will not be restrained by words added *ex majore cautela*, or by affirmative words more restrictive, which do not make a general description ambiguous or uncertain. If the descriptive words are without ambiguity, and followed by a clause repugnant to them, this clause must be rejected. 3 Pick. Rep. 272; 7 Verm. Rep. 100: 7 Johns. Rep. 217. In Large v. Penn, 6 S. & R. Rep. 488, land was conveyed by boundaries, courses and distances, and by reference to a plan of partition; it was held, that there was no implied covenant that the number of acres was correctly stated—the grantee was entitled to all within the boundaries, be they more or less. If there be several descriptions of the premises in a deed, such construction, if possible, shall be given to it, as will satisfy each. 10 Conn. R. 23. The grantor conveyed "a certain lot of land, the whole

of lot No. 20, except fifty acres embraced in a deed to S. W., the lot to contain two hundred acres by measure, besides the fifty acres :" *Held*, that this was a mere description, and not a covenant as to quantity. 2 N. Hamp. Rep. 287. See 1 S. & Mar. Ch. Rep. 388, 437.

In Walsh v. Ringer, 2 Ham. Rep. 327, it was decided that the words "seventy acres of land, being and lying in the south-west corner of the south-west quarter of section 14, township 12, range 5, of land sold at L," are a good description in a deed, and include the land in an equal square. And a deed which professed to convey a moiety of a tract of land, but describes the part conveyed by metes and bounds, conveys only such part as is within the limits designated, although it may be less than a moiety. 1 H. & Johns. Rep. 167. See 1 Ala. Rep. 415, 320.

If the deed under which the defendant claims had conveyed the south half of the half quarter section, and designated the number of acres it contained, the designation of quantity would not restrict the general description; for the half of the tract would be ascertained by reference to the whole, and would pass, though the number of acres was more or less than are stated. This conclusion is the result of reason, and is fully supported by several of the cases cited. But it is only by construction the words "south part" can be intended to mean the *south half*, when unexplained by other words restricting or enlarging their meaning. In themselves, and in the absence of every thing else, they may be regarded as descriptive of the land conveyed; and upon the principle, that in a case of doubt and uncertainty the deed shall be construed most strongly against the grantor, and that such an interpretation shall be placed on the instrument as will make it operative *ut res magis valeat quam pereat*. But here the additional words as to quantity must be looked to as furnishing a controlling guide in the construction of the deed, and whether they are taken as a part of the description of the premises, or as a covenant that the land contains so many acres, is altogether unimportant. Whether considered in one sense or the other, they show how much of the south part is conveyed by the deed to the plaintiff. See 1 Ired. Rep. 252, 283; 2 Id. 170; 4 Dev. & Bat. Rep. 133, 241.

It is not allowable to control the deed by the patent; for although the patent may describe the half quarter as containing eighty 20-100 acres, yet this does not prove that a deed conveying one-half of this quantity was intended to grant an equal moiety of the lands embraced in the government survey. The plaintiff may have been aware that the estimate made by the United States surveyor was incorrect. Be this as it may, looking to the deed it cannot be intended that the plaintiff conveyed more land than it expresses on its face—thus far the deed would be operative, even if the surveyor's estimate had been for too little instead of too large a quantity. If it appeared that the deed referred to, and adopted the estimate stated in the patent as correct, then, perhaps, a different conclusion might be attained.

The deed must be held to speak its own meaning, and cannot be limited, enlarged or explained by parol evidence, so as to make it operative otherwise than its terms indicate.— 4 Wend. Rep. 369; 13 Pick. Rep. 121; 4 Day's Rep. 395; 3 McC. Rep. 269; 6 N. Hamp. Rep. 205; 12 Johns. Rep. 77, 427, 488; 11 Wend. Rep. 422; 3 Call's Rep. 194; 3 H. & Munf. Rep. 399; 2 Leigh's Rep. 630; 7 Id. 632; 1 How. Rep. (Miss.) 591; Walk. Rep. (Miss.) 115; Freem. Ch. Rep. (Miss.) 53; 4 Stewt. & P. Rep. 96; 2 Porter's Rep. 29; 5 Id. 498; 1 Ala. Rep. N. S. 161; 2 Id. 280; N. Car. T. Rep. 34; 4 Hawks' Rep. 64; Monr. Rep, 63; 6 Id. 182; 2 H. & McH. Rep. 57; 3 Id. 437; 2 H. & Johns. R. 498; 3 Id. 329; 5 Id. 155; 6 Id. 24, 435; 1 H. & Gill's Rep. 172, 438. These citations very satisfactorily show, that while in some cases it is allowable to prove by parol, matters which are extrinsic of, and not concluded by the deed, it is not admissible thus to contradict the description of the land it purports to convey; so as to give to the deed an operation different from what its terms import. If it was the intention of the parties, that the deed should have conveyed a moiety of the half quarter section, although it contained more than the estimated quantity, upon satisfactory proof being made of this fact, it is competent for a court of chancery so to reform the deed as to give effect to the intention. 3 S. & Mar. Rep. 67; 7 Id. 340; 1 Ala. Rep. N. S. 161; 8 Id. 345.

In respect to boundaries, it is said, if they are ancient they

may be proved by reputation.   2 Litt. Rep. 159; 2 Marsh. Rep. 158; 3 Rand. Rep. 44; 6 Mass. Rep. 441; 3 Ham. Rep. 283; 6 Pet. Rep. 341; 10 Johns. Rep. 377; 4 Day's Rep. 265; 4 Dev. Rep. 342; Cooke's R. 142; 6 Litt. R. 7. Declarations of persons who are dead, and the testimony of aged witnesses have been received upon a question of boundary.   12 Pick. Rep. 532; Pet. C. C. Rep. 496; 4 H. & McH. Rep. 158.   So, evidence of the possession of proprietors of adjacent tracts in reference to a division line has been admitted against a party who recognized such possession. 6 Wend. Rep. 467.   But the declarations of deceased persons, as to boundaries, are not admissible, when it appears that they had an interest in making them.   4 N. Hamp. Rep. 213; 8 Leigh's Rep. 697.   See however, 11 Price's Rep. 162.

In *some* of the cases, the declarations of deceased persons have been rejected because they were made *post litem motam*, and it was held that it is indispensable to their admissibility that they should be made *ante litem*.   It is said, in all cases where these declarations have been received, it was first made to appear that the declarant was dead; and that several cases have expressly decided that this is an essential condition.   3 McC. Rep. 258.   To show that he is beyond the reach of the process of the court is not enough.   2 N. Car. L. Rep. 635; 10 Serg. & R. Rep. 275; 1. H. & McH. Rep. 531.   But a distinction, it is said, must be observed as to proving declarant's death, between particular declarations coming from individuals and general reputation. In the former case, death must be proved.   In the latter, it is never required.   2 Phil. Ev. C. & H's Notes, 628 to 638.

It is perfectly clear, the declaration of Murphy was properly rejected.   There was no *res gestae* to which it was referrable—nor does it tend to establish a general reputation; but merely the opinion of the declarant, as to the dividing line of the section, or an assertion by him that it was run by a surveyor.   Placing out of view every other objection to this testimony, its exclusion was warranted by the failure to show that the evidence of Murphy could not have been obtained, either by his personal attendance in court, or by deposition.

By the act of 1836 "for the relief of tenants in possession against dormant titles," it is enacted, that "in any suit which shall be commenced in any of the courts of this State, for the possession of lands and tenements, it shall be lawful for the defendant, at any time before the trial of such suit, to suggest to the court, that he and those whose estates he has in the lands or tenements sued for, have had adverse possession of the same for three years next before the commencement of such suit, and that he, or those whose estate he has, have made permanent and valuable improvements on the lands untenanted, sued for, during the time he or they have had adverse possession of the same. And the jury trying the suit, if they shall find for the plaintiff, shall at the same time inquire if the suggestion so made be true or false; if false, they shall return a verdict as in ordinary cases for the damages sustained; but if true, they shall assess the value of the improvements at the time of the trial, which have been made by the defendant, or by those whose estate he has: and shall assess the value of the lands or tenements, which they shall return a verdict for, and shall also assess the value of the use and occupation of the same, without considering the increased value thereof by reason of such improvements as shall have been made by the said defendant, or by those whose estate he has. And if the value of the use and occupation, as assessed, shall exceed the value of the improvements, as assessed, the court shall render a judgment against the defendant for the excess." It is further provided by the second section of the same act, that "where the value of the improvements so assessed, shall exceed the value of the use and occupation, no writ of possession shall be issued for the term of one year after the rendition of judgment, unless the plaintiff or his legal representative shall pay to the clerk of the court, for the defendant, the excess of the assessed value of the improvements over the value of the use and occupation; and if the plaintiff, or his legal representatives, shall neglect for the term of one year, to pay the excess in value of the improvements, and the defendant or his legal representatives, shall, within three calendar months after the expiration of the year, pay to the clerk of the court, for the plaintiff, the value of the lands or tenements as assessed by

Lamar v. Minter.

the jury, then the plaintiff shall be forever barred of his writ of possession, and from ever having or maintaining any action whatever against the defendant, his heirs or assigns, for the lands or tenements recovered by such suit; and if the defendant, or his legal representatives, shall not, within the said three months, avail him, or themselves of the benefit of this act, the plaintiff, or his legal representatives, may sue out a writ of possession as in ordinary cases. Clay's Dig. 320, § 47, 48.

In Hollinger v. Smith, 4 Ala. Rep. 367, we held, that this statute gives a cumulative remedy, and does not repeal the common law, which maintains, that where the defendant in an ejectment, or similar action, is in possession under color of title, and is not a mere trespasser, he is entitled to recover the value of the permanent improvements by way of deduction *pro tanto* from the mesne profits.

Several of the States have enacted laws similar to our own in principle; how far they differ in terms we are not informed, as we have not compared them. In Tennessee it has been held, that equity enjoins the successful claimant from taking possession of land until by the rents and profits the improvements are paid for, or they are otherwise compensated; and that the general principles laid down in the statutes of that State of 1796, and 1805, are perfectly coincident with the relief previously established by courts of equity. Cooke's Rep. 294. *Further*, the nature of the claim to be exhibited by a person claiming the value of improvements, should be such as would protect him under the statute of limitations. 2 Tenn. Rep. 341, 392. But under the earlier Tennessee act, which makes seven years peaceable possession a bar, it has been held, that although a regular title in form is not necessary, a mere naked possession will not be sufficient; but the defendant seeking to avail himself of his possession, must show color of title. Cooke's Rep. 356. Possession of land in virtue of a bond for seven years, is not sufficient to protect a party under the statute of limitations. 2 Tenn. Rep. 394. Color of title is where the possessor has a conveyance of some sort by deed or will, or inheritance which he may believe to be a title. 4 Hayw.

6

Rep. 182.    A deed *prima facie* good though not legally ope-
rative, gives color of title : as where the conveyance is made
by a person apparently having an authority to convey, which
conveyance would actually have passed the title, had the
circumstances existed as supposed.    5 Hayw. Rep. 286 ;
Peck's Rep. 215.    Or where the defendant shows a claim of
title founded on a grant, or *equity*, or apparent equity.—
Peck's Rep. 234.    See also 2 Yerger's Rep. 200, 249, 288 ;
6 Id. 280.    Under the act of limitations of Tennessee of 1819,
it has been decided, that it does not require even color of ti-
tle to protect a party in the possession of land ; that it is on-
ly necessary for him to show that his possession was taken
under a claim hostile to the real owner, and that such hos-
tility continued during the period of seven years.    But it is
added, that, that act was not intended to bar a recovery of
land so held, except as to so much as is actually occupied by
inclosure, definite, positive, and notorious.    3 Yerger's Rep.
397.    *Further*, adverse possession is exclusively a question
of fact for the jury.    3 Yerger's Rep. 435.    We have thought
it proper to make these citations of the decisions in our sis-
ter State, upon her acts of limitation in respect to real estate,
that it may be seen what is there regarded as adverse posses-
sion in the meaning of her statutes, which entitle tenants in
possession to the value of their improvements against persons
who recover the land on which they are made, by a para-
mount title.    It may be proper to remark, that the cases in
2 Tenn. Rep. 341 and 392, were decided previous to 1819,
and that it may be necessary for the tenant to make out an
adverse possession by proof of color of title, although the act
of 1819 modified the construction given to its predecessors.

It has been decided, under a statute of Kentucky, that im-
provements made by one who occupies land *mala fide* will
not be respected, where he is ousted by the party in whom
the title is vested.    2 Bibb's Rep. 44.    But a *bona fide* pos-
sessor, is entitled to all necessary, lasting, and valuable im-
provements made by himself or a stranger, on the premises,
deducting rents and deterioration of soil.    2 Bibb's Rep. 45 ;
3 Marsh. Rep. 202, 388 ; 4 Bibb's Rep. 199 ; 4 Litt. Rep.

371. So a man who occupies land according to the boundaries in his deed, will be considered as a *bona fide* occupant, and entitled to pay for his improvements; unless it is proved that he knew the true lines of the survey were variant from the courses, &c. called for in his deed. 2 Litt. Rep. 280. Improvements made under a parol contract of lease, which is afterwards avoided, shall always be paid for. 3 Id. 391, 403. Where a person has purchased land by a verbal contract, under which he enters and makes permanent and valuable improvements, if the vendor disaffirms the contract and recovers the possession, the vendee is entitled to recover the value of such improvements, and the vendor to be compensated for the use and occupation. 2 J. J. Marsh. R. 517. See further, 1 J. J. Marsh. Rep. 404; 4 Monroe's Rep. 60; 8 Wheat. Rep. 1; 3 Atk. Rep. 130. For the doctrine of adverse possession, especially in respect to the operation of the statute of limitations, see 2 Crabb's Real Property, § 2380 and 2382, and citations in notes; Taylor v. Horde, 2 Smith's Leading Cases, 324, with English and American notes.

"An actual, continued, visible, notorious, distinct and hostile possesion," is adverse within the statutes of limitation of most, if not all the States, as well as some of the English enactments; but we should hesitate to lay these down as the only essentials of "adverse possession" within the meaning of the act of 1836. The case before us does not, however, make it necessary to define with particularity the character of the possession contemplated by the statute: It was certainly quite enough for the defendant to have shown that his occupancy was *bona fide* under color of title. His possession could be vindicated as we have seen, by proof of entry under a mere verbal contract of sale, or by a title at law or in equity, either real or apparent; and some of the cases maintain, that a possession under an honest impression that the party is entitled to the premises, and without notice of a conflicting claim, gives him a right to demand compensation for permanent and valuable improvements made thereon. It may perhaps be inferred from the deed under which the de-

fendant claimed, when taken in connection with the patent, that he supposed he was the proprietor of a moiety of the half quarter section. Certainly upon the question of the *bona fides* of his possession the evidence is such as should have been referred to the jury. And for the purpose of showing the defendant's occupancy was adverse to the plaintiff, within the statute, parol evidence that it was the intention of the plaintiff to sell the half of the tract was admissible ; although the deed could not be thus aided, so as to give to it an operation more enlarged than its terms import. We have said, that if the deed did not conform to the intention of the parties, it might be remodelled so as to make it effect the purpose contemplated by them ; if then the deed did not express the contract truly, the defendant has an equity which justifies his possession, and entitles him to demand a verdict for the value of such improvements as the act designates.

What we have said will indicate that, that the circuit court took a view of the defendant's rights altogether too restricted ; but should have admitted parol evidence of the declarations of the plaintiff, that he had sold one half the tract, and charged the jury, as we have intimated, upon the evidence before them. For the error in the ruling on this point, the judgment is reversed, and the cause remanded.