[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1146 
This Court consented to answer two questions certified by the United States District Court for the Northern District of Alabama ("the federal district court") under Rule 18, Ala. R.App. P. The certified questions relate to the coverage afforded Sandra Hill Thomas ("Thomas"), a customer of Carl Cannon Chevrolet-Olds, Inc. ("Carl Cannon"), by two insurance policies issued to Carl Cannon: a garage policy issued by Certain Interested Underwriters at Lloyd's of London ("Lloyd's London") and an umbrella policy issued by Royal Insurance Company of America ("Royal").
 Facts
About October 9, 1998, Carl Cannon lent a car to Thomas while Carl Cannon repaired Thomas's car. On October 13, 1998, Thomas was driving the Carl Cannon car when it collided with another car occupied by Velma Daniel ("Daniel"). To recover for injuries she suffered in the collision, Daniel sued Thomas and Carl Cannon in the Walker Circuit Court. The Walker Circuit Court entered a summary judgment for Carl Cannon.
The Lloyd's London and Royal policies constituted Thomas's only potential sources of liability insurance for the collision. Lloyd's London contended that Section II, paragraph A.1.a.(2) of the Lloyd's London garage policy ("the exclusion") excluded Thomas as an insured unless she either had no other available primary, excess, or contingent insurance or had insufficient coverage under such insurance to meet the $20,000 minimum required by the Motor Vehicle Safety-Responsibility Act, § 32-7-1
et seq., Ala. Code 1975 ("the Act"). Lloyd's London further contended that, if Thomas did not have other available primary, excess, or contingent insurance *Page 1147 
or had insufficient coverage under such insurance to meet the $20,000 minimum required by the Act, then the exceptions to the exclusion preserved coverage for Thomas under the Lloyd's London garage policy but limited the coverage to the amount necessary for her to meet the $20,000 minimum required by the Act.
The exclusion and the two exceptions to the exclusion appear within the subsection of the Lloyd's London garage policy defining "who is an insured" under the policy. After that subsection of the policy initially defines "insured" as including Carl Cannon and anyone else while using a Carl Cannon car with the permission of Carl Cannon, the exclusion then excludescustomers of Carl Cannon. The two exceptions to the exclusion then preserve coverage for customers who either have no other available primary, excess, or contingent insurance or have insufficient coverage under such insurance to meet the $20,000 minimum required by the Act. The pertinent portions of the Lloyd's London garage policy provide:
"SECTION II — LIABILITY COVERAGE
"A. COVERAGE
". . . .
"1. WHO IS AN INSURED
"a. The following are `insureds' for covered `autos':
"(1) You [Carl Cannon] for any covered `auto.'
 "(2) Anyone else while using with your permission a covered `auto' you own, hire or borrow except:
". . . .
 "(d) Your customers, if your business is shown in the Declarations as an `auto' dealership. However, if a customer of yours:
 "(i) Has no other available insurance (whether primary, excess or contingent) they are an `insured' but only up to the compulsory or financial responsibility law limits where the covered `auto' is principally garaged.
 "(ii) Has other available insurance (whether primary, excess or contingent) less than the compulsory or financial responsibility law limits
where the covered `auto' is principally garaged they are an `insured' only for the amount by which the compulsory or financial responsibility law limits exceed the limit of their other insurance."
(Emphasis added.)
Daniel and Royal contend that the exclusion in the Lloyd's London garage policy is invalid because it violates public policy as expressed in the requirement of the Act that a car owner's liability insurance policy shall insure permissive users of the car. Daniel and Royal further contend that, because the exclusion is invalid, Thomas is an insured entitled to the same coverage of $1,000,000 as permissive users of Carl Cannon cars who were not customers of Carl Cannon.
The Royal policy states on the declarations page that it provides umbrella coverage:
"ITEM 2 COVERAGE: UMBRELLA"
The Royal policy defines an insured, in pertinent part:
"IV. WHO IS AN INSURED
 "1. If you [Car] Cannon] are designated in the declarations as:
 "(a) An organization other than a partnership, joint venture or limited liability company, you are an insured. . . .
". . . .
"2. Each of the following is also an insured:
". . . . *Page 1148 
 "(d) Any person who has your permission to use an `automobile' owned by, loaned to, or hired for use by you, and any person or organization legally responsible for the use of that `automobile'. . . ."
Royal concedes that Thomas is an insured entitled to coverage under the Royal umbrella policy. However, Royal contends that the Royal umbrella policy covered Thomas only for liability to Daniel that exceeds $1,000,000. Royal contends that the Insuring Agreement of the Royal umbrella policy provides that Royal insures "sums in excess of the `retained limit,' and that the policy defines Thomas's "retained limit" as "the applicable policy limits of the `underlying insurance' shown on the declarations page" of $1,000,000. In pertinent part, the Insuring Agreement of the Royal umbrella policy provides:
"I. INSURING AGREEMENT
 "1. We will pay on behalf of the insured those sums in excess of the `retained limit' which the insured becomes legally obligated to pay as damages to which this insurance applies because of:
 "(a) `Bodily injury' or `property damage' which occurs during the policy period and is caused by an `occurrence';
". . . .
 "The amount we will pay is limited as described in Section VI — LIMITS OF INSURANCE.
". . . ."
In pertinent part, the Royal policy defines "retained limit" and "underlying insurance:"
"V. DEFINITIONS
". . . .
"11. `Retained limit' means:
 "(a) With respect to any `occurrence' that is covered by `underlying insurance' . . ., . . . the applicable limits of the `underlying insurance' shown on the declarations page . . .; or
 "(b) With respect to any `occurrence' that is not covered by `underlying insurance' or any other insurance, the amount stated in Item 4 of the declarations as the Retained Limit/Each Occurrence.
". . . .
 "13. `Underlying insurance' means the policies . . . listed in the Schedule of Underlying Insurance. . . ."
The Schedule of Underlying Insurance on the declarations page of the Royal policy shows, in pertinent part:
"ITEM 6 SCHEDULE OF UNDERLYING INSURANCE
"Type of Policy Insurer Applicable Limit
"GARAGE LIABILITY LLOYD'S $1,000,000 AUTO ONLY
$1,000,000 OTHER THAN AUTO
$2,000,000 AGGREGATE
(Capitalization original; emphasis added.)
Item 4 on the declarations page of the Royal umbrella policy shows: *Page 1149 
"ITEM 4 LIMITS AND PREMIUM
"LIMITS OF INSURANCE:
"$5,000,000. EACH OCCURRENCE
"$5,000,000. AGGREGATE WHERE APPLICABLE
"$_________ RETAINED LIMIT/EACH OCCURRENCE
"PREMIUM X FLAT ____ AUDITABLE —
$6,000.00 SEE PREMIUM COMPUTATION ENDORSEMENT"
(Capitalization original; emphasis added.)
Daniel, on the other hand, contends that, if Thomas's coverage under the Lloyd's London garage policy is limited to $20,000, then Section VI.6 of the Royal policy ("the drop-down provision") obliges Royal to "drop down" and to indemnify Thomas for any liability she incurred to Daniel that is in excess of $20,000 and less than or equal to $5,000,000, the policy limit of the Royal policy. The drop-down provision provides:
"VI. LIMITS OF INSURANCE
". . . .
 "6. If the applicable limits of the `underlying insurance' or other insurance are reduced or exhausted by payment for `bodily injury' or `property damage' which occurs . . . during the policy period of this policy, the limits of this policy will apply in excess of such reduced or exhausted limits."
To resolve these coverage disputes, Royal sued Thomas, Daniel, and Lloyd's London for a declaratory judgment in the federal district court. Thomas, whom neither Lloyd's London nor Royal provided with counsel for the coverage disputes, depended on Daniel to advocate Thomas's rights to coverage under the policies. (Likewise, Thomas has not filed a brief in this Court.) After Royal moved for a partial summary judgment and Lloyd's London cross-moved for a summary judgment, the federal district court certified these questions to this Court:
 "1. Is the exclusion or limiting clause contained in Section II, paragraph A.1.a.(2) of the Lloyd's Garage Liability Policy issued to Carl Cannon Chevrolet-Olds, Inc., as the insured's primary liability coverage, valid under Alabama law? Put another way, does the Alabama law allow an insurer to limit its exposure under a so-called `garage' policy by reducing its liability limit to the statutory minimum in cases in which a permitted driver qualifies as an `insured,' but does not possess automobile liability coverage?
 "2. Depending upon the answer to question 1, what coverage, if any, is provided to the driver of the automobile that was furnished by Carl Cannon Chevrolet-Olds to her under the language of Section VI.6 of Royal's Big Shield Commercial Catastrophe Liability Policy?"
 Analysis Lloyd's London Policy
An exclusion in an insurance policy is a provision that eliminates coverage that would have existed in the absence of the exclusion. Coppi v. West American Ins. Co., 247 Neb. 1, 11,524 N.W.2d 804, 813 (1994). An exception to an exclusion in an insurance policy is a provision that preserves coverage that would have been *Page 1150 
excluded by the exclusion in the absence of the exception.Avemco Ins. Co. v. Auburn Flying Serv., Inc., 242 F.3d 819, 822 n. 3 (8th Cir. 2001).
On October 13, 1998, the pertinent portion of the Motor Vehicle Safety-Responsibility Act provided:
 "§ 32-7-22. `Motor vehicle liability policy' defined; policy provisions.
 "(a) A `motor vehicle liability policy,' as the term is used in this chapter, means an owner's or an operator's policy of liability insurance. . . .
"(b) The owner's policy of liability insurance:
". . . .
 "(2) Shall insure the person named in the policy and any other person, as insured, using any motor vehicle or motor vehicles designated in the policy with the express or implied permission of the named insured. . . .
". . . .
 "(j) The requirements for a motor vehicle liability policy may be fulfilled by the policies of one or more insurance carriers which policies together meet the requirements for a policy."
Section 32-7-22, Ala. Code 1975.
In State Farm Mutual Automobile Insurance Co. v. Auto-OwnersInsurance Co., 331 So.2d 638 (Ala. 1976), a garage lent a car to a customer named Folkes to use while the garage repaired Folkes's car. Folkes was driving the loaned car when it collided with another car. A person injured in the collision sued Folkes. Folkes was insured by State Farm, and the garage was insured by Auto-Owners. Folkes's State Farm policy contained an "escape clause" to the effect that the State Farm coverage was excess over other collectible insurance for any liability incurred by Folkes in the use of a temporary substitute car. The Auto-Owners policy issued to the garage contained this exclusion:
 "`Garage customers are not insureds with respect to the use of automobiles covered by this policy except in accordance with the following additional provisions:
 "`(1) If there is other valid and collectible insurance, whether primary, excess or contingent, available to the garage customer and the limits of such insurance are sufficient to pay damages up to the applicable limit of the financial responsibility law of the state where the automobile is principally garaged, no damages are collectible under the policy.
 "`(2) If there is other valid and collectible insurance available to the garage customer, whether primary, excess or contingent, and the limits of such insurance are insufficient to pay damages up to the applicable limit of the aforesaid financial responsibility law, then this insurance shall apply to the excess of damages up to such limit.
 "`(3) If there is no other valid and collectible insurance, whether primary, excess or contingent, available to the garage customer, this insurance shall apply but the amount of damages payable under this policy shall not exceed the applicable limit of the aforesaid financial responsibility law.'"
331 So.2d at 640 (emphasis added).
State Farm sued Auto-Owners for a declaratory judgment that the Auto-Owners policy covered Folkes and provided Folkes with primary coverage. State Farm contended that the exclusion in the Auto-Owners policy excluding Folkes as an insured was invalid because it violated the public policy expressed in the Motor Vehicle Safety-Responsibility Act. The Code sections then applicable were like the version of § 32-7-22 applicable to the case *Page 1151 
now before us. Title 36, § 74(62)(b)2., Ala. Code 1940 (Recomp. 1958), which was in effect when Folkes's collision occurred, provided that an owner's policy of liability insurance (like that issued by Auto-Owners to the garage) "shall insure the person named therein and any other person, as insured, using any such motor vehicle or motor vehicles with the express or implied permission of such named insured. . . ." Title 36, § 74(62)(j), provided that "[t]he requirements for a motor vehicle liability policy may be fulfilled by the policies of one or more insurance carriers which policies together meet such requirements." State Farm further contended that, because the exclusion in the Auto-Owners policy was invalid, the Auto-Owners policy covered Folkes, the Auto-Owners policy afforded Folkes primary coverage, and Folkes's own State Farm policy afforded Folkes only excess coverage.
The trial court declared that the Auto-Owners exclusion did not violate the public policy expressed in the Act. Further, the trial court declared that, because the State Farm policy provided at least excess coverage for Folkes, the Auto-Owners exclusion excluded coverage for Folkes under the Auto-Owners policy. State Farm appealed. Affirming the trial court, this Court held that the Auto-Owners exclusion did not violate the public policy expressed in the Act, that the State Farm policy provided Folkes with primary insurance notwithstanding the "escape clause" in the State Farm policy, and that the Auto-Owners exclusion excluded Folkes from coverage under the Auto-Owners policy because the State Farm policy afforded Folkes coverage. This Court said:
"Issues Presented for Review
 "(1) Did the policy of insurance issued by State Farm to Folkes afford him such coverage that the policy issued by Auto-Owners to [the garage] afforded [Folkes] none?
 "(2) Is the exclusionary provision in the Auto-Owners policy contra to the public policy of Alabama?
"Decision and Opinion
 "The first issue can otherwise be stated, as it was in brief by Auto-Owners: which coverage is contingent or excess and which coverage is primary?
 "Various types of `other insurance' clauses were analyzed and discussed at length, most recently in State Farm Mutual Automobile Insurance Co. v. Auto-Owners Insurance Co., 287 Ala. 477, 252 So.2d 631 (1971)[,] and Continental National American Group v. Burleson, 283 Ala. 671, 220 So.2d 611
(1969). By reference to those decisions we may characterize the `other insurance' clause set out in this opinion, found in the State Farm policy as an automobile-business-owned temporary substitute automobile `escape clause.' That clause from the Auto-Owners policy which is set out herein could be described as one `exclusionary' of otherwise insured garage customers.
 "It is the specific composition of the `exclusionary' clause of the Auto-Owners policy, under the operative facts of this case, which takes this case from without the general rule that primary coverage follows ownership of the auto. That rule underlies the reasoning in State Farm, supra, and Burleson, supra. No coverage is afforded garage customers if there is available other collectible insurance whether primary, excess, or contingent. The distinguishing factor is the specificity of the `exclusion.'
 "Where the exclusionary clause is specific by its terms to include primary or excess insurance, excess insurance constitutes `other collectible insurance', and *Page 1152 
permits operation of the exclusion. United States Fidelity and Guaranty Co. v. Dixie Auto Insurance Co., 292 F.Supp. 554 (Ala.) (1968). The general rule that primary coverage follows ownership is not controlling where there is a specific exclusionary
clause rather than a `simple' escape clause contained in the owner's policy. Continental Casualty Company v. Weekes, 74 So.2d 367 (Fla.) (1954).
 "Auto-Owners' policy intended to extend coverage to additional insureds only when they have no other coverage available to them. Excess coverage as provided by State Farm, constitutes `other insurance' as contemplated in the exclusion found in Auto-Owners' policy. Therefore, State Farm's coverage is primary. Clearly, Auto-Owners has the right to determine the class of persons it wishes to insure as long as the policy provides the coverage required by law. Auto-Owners' policy is not violative of the public policy of this State expressed in the Motor Vehicle-Safety Responsibility Act. Code of Ala., Tit. 36, § 74(42), et seq.
 "By sustaining the operative effect of the Auto-Owners exclusionary clause Folkes is not deprived of the amount of liability insurance which the law requires he be afforded. Were it not provided by the State Farm policy — other available insurance — the Auto-Owners' policy would provide it to the full extent required by law. The law is only concerned that required coverage is provided, not by what or which carrier. The requirements of coverage may be fulfilled by policies of one or more carriers which together meet the requirements. Code of Ala., Tit. 36, § 74(62)(j)."
331 So.2d at 640-41.
Despite differences in wording, the exclusion in the Auto-Owners policy in State Farm operated like the exclusion in the Lloyd's London garage policy in the case before us. While the Auto-Owners exclusion generally provided that garage customers were not insureds, the Auto-Owners policy contained exceptions to the exclusion preserving coverage up to the minimum amount necessary to meet the requirement of the Motor Vehicle Safety-Responsibility Act for any garage customer who did not have other available primary, excess, or contingent insurance or had an insufficient amount of such other insurance to meet the minimum required by the Act. Likewise, while the Lloyd's London garage policy exclusion generally provides that customers of Carl Cannon are not insureds, the Lloyd's London garage policy contains two exceptions preserving coverage up to $20,000, the minimum amount required by the Act, for customers of Carl Cannon who either have no other available primary, excess, or contingent insurance or have an insufficient amount of such insurance to meet the $20,000 minimum required by the Act.
Daniel asserts in a footnote in her brief that State Farm
does not control the answer to the question whether the Lloyd's London exclusion is valid:
 "At first blush it would appear that there is controlling precedent with respect to the certified question. However, the issue in State Farm Mutual Automobile Insurance Co. v. Auto-Owners Insurance Co., 331 So.2d 638 (Ala. 1976), is different than the issue in this case. Although this Court held that the policy at issue was not violative of the public policy of this state as expressed in the Financial Responsibility laws, that policy contained an exclusion for other valid and collectible insurance. There is no such exclusion in the Lloyd's policy in this case." *Page 1153 
Daniel's brief, p. 11 n. 3. If Daniel is asserting that the Lloyd's London exclusion is not an exclusion, she misapprehends what constitutes an exclusion. An exclusion eliminates coverage that would exist in the absence of the exclusion. Coppi, supra.
The Lloyd's London exclusion generally excludes coverage for customers of Carl Cannon that would otherwise exist under the definition of "insured" in the absence of the exclusion; and the two exceptions to the exclusion then preserve coverage, up to the amount necessary to meet the $20,000 minimum required by the Act, for Carl Cannon customers who either have no other available primary, excess, or contingent insurance or have an insufficient amount of such insurance to meet the $20,000 minimum required by the Act.
If Daniel is asserting in her footnote that State Farm is distinguishable because the Auto-Owners exclusion used the words "other valid and collectible insurance, whether primary, excess or contingent, available to the garage customer" (emphasis added) rather than the words "other available insurance (whether primary, excess or contingent)," which the Lloyd's London exclusion uses, she is misreading the holding in State Farm.
The holding in State Farm that the Auto-Owners exclusion did not violate the public policy expressed in the Act did not turn on the use of the words "valid and collectible" in the Auto-Owners exclusion. Rather, the holding turned on the presence of the two exceptions to the exclusion which preserved coverage for garage customers who had either no other available insurance or insufficient coverage under such insurance to meet the minimum required by the Act. There is no material difference between an exception that preserves coverage for a customer who does not have "other valid and collectible insurance . . . available" and an exception that preserves coverage for a customer who does not have "other available insurance." A customer who does not have "valid and collectible" other insurance would not have "available" other insurance under the Lloyd's London garage policy exception to the exclusion and would therefore have coverage under that policy.
Not only was the Auto-Owners exclusion essentially the same as the Lloyd's London exclusion, but also the version of the Act in effect when the Court upheld the Auto-Owners exclusion was virtually identical to the version of the Act in effect when Thomas's collision occurred. This latter likeness invalidates Daniel's reliance on Swank v. Chrysler Insurance Co.,282 Mont. 376, 938 P.2d 631 (1997).
Daniel argues that this Court should follow the holding of the Montana Supreme Court in Swank in determining whether the Lloyd's London exclusion violates public policy. In Swank, the Montana Supreme Court held that an exclusion similar to the Lloyd's London exclusion violated the public policy expressed in the Montana compulsory insurance statute. However, that holding is not apt because Alabama did not have a comparable statute on October 13, 1998, when Thomas's collision occurred. The Mandatory Liability Insurance Act of this State did not become effective until June 1, 2000. Act No. 2000-554, § 5, Ala. Acts 2000. Accordingly, the holding in State Farm controls our answer to the first certified question in the present case. Under StateFarm, the Lloyd's London exclusion did not violate the public policy expressed in the Act as it existed on October 13, 1998. Therefore, we answer the first certified question in the affirmative for the time pertinent to this case.
 Royal Policy
"Insurance contracts, like other contracts, are construed to give effect to *Page 1154 
the intention of the parties and, to determine this intent, the court must examine more than an isolated sentence or term; it must read each phrase in the context of all other provisions.State Farm Mut. Auto. Ins. Co. v. Lewis, 514 So.2d 863 (Ala. 1987)."
Hall v. American Indem. Group, 648 So.2d 556, 559 (Ala. 1994).
 "It has been stated that a contract of insurance, being the law between the parties, should have every stipulation construed as written. It being presumed that every condition was intended to accomplish some purpose, it is not to be considered that idle provisions were inserted. Each word is deemed to have some meaning, and none should be assumed to be superfluous. All portions of a policy should be considered in construing it. Accordingly, a court will attempt to give meaning and effect, if possible, to every word and phrase in the contract in determining the meaning thereof, and a construction which neutralizes any provision of a contract should never be adopted if the contract can be so construed as to give effect to all the provisions. . . ."
J. Appleman, Insurance Law and Practice § 7383 (1981).
 "Umbrella policies differ from standard excess insurance policies in that they are designed to fill gaps in coverage both vertically (by providing excess coverage) and horizontally (by providing primary coverage). See Bryan Constr. Co. v. Employers' Surplus Lines Ins. Co., 60 N.J. 375, 290 A.2d 138, 139-40 (finding that insurance policy was `expressly called an "umbrella policy" by the insurer. Its very nomenclature suggested a purpose to protect against gaps in the underlying policies and indicated more than mere excess coverage') (1972); 8A John A. Appleman, Insurance Law and Practice, § 4909.85 at 452-53 (1981). . . . As one authority has explained, umbrella policies effectively shift away from the insured the burden of choosing the risks to which the insured remains exposed:
 "`[an umbrella] arrangement contrasts with the method of providing Excess Liability insurance along traditional lines. Under the excess approach, it is up to the insured . . . to choose those exposures against which excess protection is desired. The obvious disadvantage lies in the possibility of a wrong guess about the critical exposures. Under the Umbrella Liability contract, the principal guesswork is in the [underwriter's] rating [of the overall risk]. . . .'
 "F.C. S. Bulletins, `Companies and Coverages: Specialty Lines' at U-1 (December 1980) (cited in
Pl.'s Br. at 33)."
Commercial Union Ins. Co. v. Walbrook Ins. Co., 7 F.3d 1047, 1053 (1st Cir. 1993).
The Royal umbrella policy does not require that Thomas be an insured under the Lloyd's London garage policy in order to be an insured under the Royal policy. The Royal policy defines an "insured" as including any person using a Carl Cannon car with the permission of Carl Cannon. Royal concedes that Thomas is an "insured" under the Royal policy who is entitled at least to excess coverage under the Royal umbrella policy. Because Thomas is an "insured" under the Royal umbrella policy with, at least, excess insurance available to her under that policy, the Lloyd's London garage policy exclusion excludes Thomas as an "insured" under the Lloyd's London garage policy.
The Royal umbrella policy defines "underlying insurance" as the Lloyd's London garage policy. Because the Lloyd's London garage policy exclusion excludes Thomas as an "insured" under the Lloyd's London garage policy, Thomas is not covered *Page 1155 
by either "underlying insurance" or "other insurance" under the definition of "retained limit" in the Royal umbrella policy. The definition of "retained limit" provides that, if an occurrence is not covered by "underlying insurance" or other insurance, "retained limit" means "the amount stated in Item 4 of the declarations as the Retained Limit/Each Occurrence."
In Item 4 of the declarations page, "$" with no amount beside it appears opposite "Retained Limit/Each Occurrence." Royal argues that the absence of an amount beside the "$" means that the policy does not cover an insured who does not have "underlying insurance" or other insurance. However, the Royal policy definition of "insured," which does not condition coverage by the Royal policy on there being coverage by "underlying insurance" or other insurance, contradicts Royal's argument. Likewise, the very nature of umbrella coverage reveals the fallacy in the argument made by Royal. "Umbrella policies differ from standard excess insurance policies in that they are designed to fill gaps in coverage both vertically (by providing excess coverage) and horizontally (by providing primary coverage)."Commercial Union, 7 F.3d at 1053. An umbrella policy could not fill a horizontal gap in coverage by providing primary coverage if it provided coverage only for insureds who were covered by underlying insurance. In effect, Royal is arguing that the umbrella policy it issued affords only excess coverage rather than umbrella coverage. However, the designation of the coverage as "umbrella" on the declarations page of the Royal policy forecloses that argument.
Because we must interpret insurance policies "to give meaning and effect, if possible, to every word and phrase in the contract" and cannot adopt "a construction which neutralizes any provision," J. Appleman, Insurance Law and Practice, supra, we must interpret the absence of an amount beside the "$" where the amount of the "Retained Limit/Each Occurrence" is to be designated in Item 4 of the declarations page as the expression of an intent to specify that the "Retained Limit/Each Occurrence" was zero when there was no applicable "underlying insurance" or other insurance and that, therefore, the "retained limit" applicable to Thomas under the Royal policy is zero. This interpretation means that the Royal policy affords Thomas primary coverage for Daniel's claims.
The drop-down provision provides that the Royal policy will drop down and provide excess coverage when the limits of the "underlying insurance" have been reduced or exhausted by payment for "bodily injury" or "property damage." Because Thomas does not have "underlying insurance" and the Royal policy affords primary coverage to Thomas instead of excess coverage, the drop-down provision does not apply to the coverage Royal owes Thomas.
 Conclusion
The Lloyd's London garage policy exclusion validly excludes Thomas as an insured under that policy. The Royal umbrella policy affords Thomas primary coverage for the collision, and the drop-down provision in the Royal policy has no application to the coverage for Thomas under the Royal policy.
QUESTIONS ANSWERED.
HOUSTON, SEE, LYONS, BROWN, HARWOOD, and STUART, JJ., concur. *Page 1156