American Resources Insurance Company appeals from an order of the Bibb Circuit Court holding that American Resources was obligated to provide insurance coverage under an umbrella insurance policy American Resources issued to H H Stephens Construction, Inc. We reverse the trial court's judgment and render a judgment in favor of American Resources.
 Facts and Procedural History
On April 11, 2003, Kenneth Gilmore, an employee of H H Stephens acting within the scope of his employment duties, was operating a vehicle that collided with a vehicle driven by Garnet Michelle Garvin. Garvin was killed, and her passenger, Matthew Phillips, was injured.
On the date of the collision, H H Stephens was insured by three policies issued by American Resources: (1) policy no. BA22989, entitled "Commercial Auto Coverage Part Business Auto" ("the auto policy"); (2) policy no. CP64842, entitled "Commercial Lines Policy" ("the general-liability policy"); and (3) policy no. XL52606, entitled "Commercial Umbrella Policy" ("the umbrella policy"). In addition, H H Stephens had in place an automobile-liability policy issued by Canal Insurance Company ("the Canal policy").
Susanne Giganti, Garvin's mother and the personal representative of her estate, subsequently sued H H Stephens seeking *Page 870 
damages for wrongful death. Phillips also notified H H Stephens that he intended to sue H H Stephens to seek recovery for the injuries he suffered in the accident. In accordance with the Canal policy, Canal Insurance undertook H H Stephens's defense and tendered $1,000,000 — the full limits of its policy — to Giganti and Phillips, as the injured parties. American Resources, however, refused to defend H H Stephens, contending that its three policies provided no coverage to H H Stephens for the accident involving Giganti and Phillips.
H H Stephens filed a third-party complaint naming American Resources, Giganti, and Phillips as third-party defendants. In its third-party complaint, H H Stephens sought a judgment declaring that American Resources had a duty to provide coverage to H H Stephens under one or more of the three policies American Resources had issued to H H Stephens. H H Stephens, American Resources, Giganti, and Phillips submitted the declaratory-judgment action to the trial court on stipulated facts and jointly introduced exhibits.
After conducting a hearing on the declaratory-judgment action at which the trial court heard oral arguments, the trial court ruled that American Resources had no obligation to defend or to provide coverage to H H Stephens under the auto policy or the general-liability policy.[1] However, the trial court held that the umbrella policy "is ambiguous and, further, that a reasonably prudent person would have understood and expected the Umbrella policy to extend coverage to Giganti's claims and Phillips'[s] claims."[2] *Page 871 
The trial court concluded that the umbrella policy was ambiguous because although the title page of the policy is captioned "Commercial Umbrella Policy" and the declarations page includes an "Endorsement Schedule" stating that the policy contains an "Umbrella Coverage Form," the policy does not include an "Umbrella Coverage Form." Instead, the policy contains an "Occurrence Excess Policy" provision that is not mentioned in the "Endorsement Schedule."
The trial court held that the discrepancy between the title page, the declarations page, and the policy provisions was "significant" and "patently misleading." Central to the trial court's conclusion was the distinction it drew between "umbrella policies" and "excess policies." Those types of policies, in the trial court's view, "serve distinct and competing objectives." The trial court explained:
 "Excess policies provide an additional step of coverage above underlying primary insurance and, as such, generally do not provide any broader coverage than that provided by the underlying policy. Scottsdale Ins. Co. v. Safeco Ins. Co. Of America, 111 F.Supp.2d 1273, 1278
(M.D.Ala.2000). In contrast, umbrella policies provide the broadest coverage available. Id. at 1277. As recently observed by the Alabama Supreme Court in Royal Ins. Co. of America v. Thomas, [879 So.2d 1144, 1155
(Ala. 2003) ], `Umbrella policies differ from standard insurance excess insurance policies in that they are designed to fill gaps in coverage both vertically (by providing excess coverage) and horizontally (by providing primary coverage).'"
The trial court then discussed the "Auto Liability Following Form" endorsement in the umbrella policy ("the umbrella endorsement"), which states that the policy provides no coverage for "`bodily injury' or `property damage' arising out of the ownership, maintenance, use or entrustment to others of any `auto'" unless "coverage is provided in `underlying insurance.'" The definitions section of the umbrella policy defines "underlying insurance" as "the coverage(s) afforded under insurance policies designated in Item 7 of the Declarations and any renewals or replacements of those policies." Item 7 of the declarations lists three policies: the general-liability policy, the auto policy, and a workers' compensation policy issued by Midwest Employers Casualty Company.
The insurance policy in effect on the vehicle operated by Gilmore — that is, the Canal policy — is not designated in Item 7 of the declarations in the umbrella policy. American Resources, citing this Court's decision inGreene v. Hanover Insurance Co., 700 So.2d 1354
(Ala. 1997), therefore argued that the umbrella policy did not provide coverage to H H Stephens for the events giving rise to Giganti's and Phillips's claims.
The trial court rejected American Resources' argument that the umbrella endorsement was unambiguous and should be enforced to deny coverage to H H Stephens. The trial court stated that an umbrella policy generally serves two objectives. First, the trial court explained that "[t]he purpose of an umbrella policy is to *Page 872 
fill gaps, both vertically and horizontally, when coverage is otherwise unavailable." Second, the trial court reasoned that an umbrella policy "is supposed to remove the risks associated with placing excess insurance on the wrong exposure."
The trial court rejected American Resources' argument that the umbrella policy provided H H Stephens with "umbrella coverage for general liability claims not involving automobiles and . . . umbrella coverage for automobile liability insured by American Resources." In the trial court's view, accepting American Resources' argument would frustrate both of the objectives identified — that is, "H H Stephens would be left with a vertical gap (excess) in coverage. . . . [and], assuming the Canal policy did not exist, H H Stephens would be left with a horizontal gap too."
The trial court also rejected American Resources' contention that this Court's decision in Greene, supra, was controlling. Instead, the trial court relied upon the following language from Royal Insurance Co. of America v.Thomas, 879 So.2d 1144, 1155 (Ala. 2003):
 "An umbrella policy could not fill a horizontal gap in coverage by providing primary coverage if it provided coverage only for insureds who were covered by underlying insurance. In effect, Royal is arguing that the umbrella policy it issued affords only excess coverage rather than umbrella coverage. However, the designation of the coverage as `umbrella' on the declarations page of the Royal policy forecloses that argument."
Noting that "H H Stephens is engaged in the business of hauling and toward such end operates a fleet of trucks" and that "[o]bviously, auto liability coverage is important to [H H Stephens]," the trial court concluded:
 "It therefore follows that a reasonably prudent person relying on the American Resources Commercial Umbrella policy would find his expectations defeated if American Resources could deny coverage under its Umbrella policy. As such, `those policy terms should be ignored in accordance with the reasonable expectations rule.' Allen D. Windt, Insurance Claims and Disputes, § 6.13 at 409 (3d ed.1995). In other words, this Court rejects a construction of the policy that would negate its umbrella character. Occidental Fire Cas. Co. of North Carolina v. Brocious, 772 F.2d 47, 54
(3d Cir.1985)."
The trial court therefore ordered that American Resources was obligated to provide coverage to H H Stephens under the umbrella policy for Giganti's and Phillips's claims, and American Resources appealed.[3]
 Standard of Review
The trial court in this case applied the law to undisputed, stipulated facts. Our review therefore is de novo.
 "When reviewing a case in which the trial court sat without a jury and heard evidence in the form of stipulations, briefs, and the writings of the parties, this Court sits in judgment of the evidence; *Page 873 
there is no presumption of correctness. Old Southern Life Ins. Co. v. Williams, 544 So.2d 941, 942 (Ala. 1989); Craig Constr. Co. v. Hendrix, 568 So.2d 752, 756 (Ala. 1990). When this Court must determine if the trial court misapplied the law to the undisputed facts, the standard of review is de novo, and no presumption of correctness is given the decision of the trial court. State Dep't of Revenue v. Garner, 812 So.2d 380, 382 (Ala.Civ.App. 2001); see also Ex parte Graham, 702 So.2d 1215
(Ala. 1997). In this case the trial court based its decision upon the stipulations, briefs, writings, and arguments of the parties' attorneys. No testimony was presented. Therefore, we must sit in judgment of the evidence, and the trial court's ruling carries no presumption of correctness."
Bean Dredging, L.L.C. v. Alabama Dep't of Revenue,855 So.2d 513, 516-17 (Ala. 2003).
 Analysis I.
American Resources argues first that the trial court erred in concluding that the umbrella policy is ambiguous. As noted, the trial court concluded that the umbrella policy is ambiguous because of the discrepancy between the use of the term "umbrella" in the title and declarations page of the policy and the later use in the policy of the words "occurrence excess policy." Because of that discrepancy, the trial court concluded, the umbrella endorsement should be disregarded.
 "`The issue whether a contract is ambiguous or unambiguous is a question of law for a court to decide. McDonald v. U.S. Die Casting Dev. Co., 585 So.2d 853, 855 (Ala. 1991). "If the terms within a contract are plain and unambiguous, the construction of the contract and its legal effect become questions of law for the court. . . ." Id. . . .
 "`"The test to be applied by [a] court in determining whether there is ambiguity is not what the insurer intended its words to mean, but what a reasonably prudent person applying for insurance would have understood them to mean." Lee R. Russ Thomas F. Segalla, Couch on Insurance § 21:14, pp. 21-23 (3d ed. 1997). . . . In determining whether an ambiguity exists, a court should apply the common interpretation of the language alleged to be ambiguous. See Alabama Farm Bureau Mut. Cas. Ins. Co. v. Goodman, 279 Ala. 538, 541, 188 So.2d 268, 270 (1966). This means that the terms of an insurance policy should be given a rational and practical construction. Green v. Merrill, 293 Ala. 628, 308 So.2d 702 (1975). Also, a court cannot consider the language in the policy in isolation, but must consider the policy as a whole. Turner v. United States Fidelity Guar. Co., 440 So.2d 1026 (Ala. 1983).'"
Nationwide Ins. Co. v. Rhodes, 870 So.2d 695,696-97 (Ala. 2003) (quoting State Farm Fire Cas. Co.v. Slade, 747 So.2d 293, 308-09 (Ala. 1999)).
American Resources contends that the umbrella endorsement is a valid exclusion that bars coverage for Giganti's and Phillips's claims. See Royal Insurance,879 So.2d at 1149 ("An exclusion in an insurance policy is a provision that eliminates coverage that would have existed in the absence of the exclusion."). The umbrella endorsement states:
 "Except to the extent coverage is provided in `underlying insurance', this insurance does not apply to `bodily injury' or `property damage' arising out of the ownership, maintenance, use or entrustment to others of any `auto':
 "1. While away from premises you own, rent or occupy; or *Page 874 
 "2. Owned by or rented or loaned to any insured.
 "`Use' is defined as including operation and `loading or unloading.'"
As noted, the definitions section of the umbrella policy defines "underlying insurance" as "the coverage(s) afforded under insurance policies designated in Item 7 of the Declarations and any renewals or replacements of those policies." Thus, the umbrella endorsement unambiguously states that unless "coverage is provided" in one or more of the "insurance policies designated in Item 7 of the Declarations" section of the umbrella policy, the umbrella policy does not cover claims of "`bodily injury' or `property damage' arising out of the ownership, maintenance, use or entrustment to others of any `auto.'" In this case, the only policy in effect on the auto driven by Gilmore was the Canal policy. Because the Canal policy is not a policy "designated in Item 7 of the Declarations" section of the umbrella policy, the umbrella policy does not apply to Giganti's and Phillips's claims against H H Stephens.
H H Stephens argues, however, that, when read in conjunction with paragraph 10 of section V of the umbrella policy, the umbrella endorsement is ambiguous.[4] According to H H Stephens, it is reasonable to construe the umbrella endorsement "to mean that umbrella coverage . . . for auto liability is available under the American Resources Umbrella Policy to the same extent such coverage is available under either American Resources' Automobile Liability Policyor a similar policy such as the [Canal policy]." (H H Stephens's brief, p. 57.) We disagree. This Court inGreene rejected an argument similar to the one made by H H Stephens in this case. Greene,700 So.2d at 1357-58 ("Greene contends that the general language of the `Excess Insurance' section of the Umbrella Policy provides excess coverage . . . if the underlying insurance . . . is inapplicable. . . . This argument misses the point. Regardless of whether the Umbrella Policy coverage takes the form of excess or nonexcess coverage, it is still subject to the Umbrella Endorsement's exclusion for injuries arising from the use of automobiles." (footnote omitted)).
Moreover, for the umbrella policy to apply to the claims brought by Giganti and Phillips, the umbrella endorsement unambiguously required H H Stephens (1) to have had a separate policy on the automobile Gilmore was driving at the time of the accident, and (2) to have had that separate policy listed in Item 7 of the declarations section of the umbrella policy. H H Stephens complied with the first condition; the automobile driven by Gilmore was covered by the Canal policy. But because the *Page 875 
Canal policy is not designated in Item 7 of the declarations section of the umbrella policy, H H Stephens did not satisfy the second condition.
H H Stephens argues in its brief, however, that an ambiguity is created by the use of the work "coverage" — which is not defined in the umbrella policy — in the umbrella endorsement, in the definition of "underlying insurance," and in Item 7 pf the declarations section of the umbrella policy. Item 7 States:
"Item 7: Schedule of `Underlying Insurance' Policies:
 "Carrier and Underlying Limits Policy Number Coverage of Liability
 "AMERICAN RESOURCES GENERAL LIABILITY $1,000.000 EACH OCCURRENCE INS CO. CP64842 06/14/02 $2,000.000 GENERAL AGGREGATE TO 06/14/03 $2,000.000 PRODUCT AGGREGATE
 "American Resources Include Automobile $1,000.000 CSL INCL Insurance Company, Liability HIRED/NONOWNED Inc. BA22989
 "MIDWEST EMPLOYERS Include Liability $1,000.000 Each Accident CASUALTY CO. $1,000.000 Disease-Policy Limit 01/01/02 $1,000.000 Disease-Each Employee" TO 01/01/03
(Capitalization in original.)
H H Stephens argues that the phrase "Include Automobile Liability" in the column headed "Coverage" means that Item 7 encompasses all
automobile-liability policies H H Stephens had in effect; H H Stephens reasons that the Canal policy therefore was "designated" in Item 7. This argument, however, is without merit. The descriptions in the "Coverage " column in Item 7 serve only to describe generally the specific policies listed in the "Carrier and Policy Number" column. Thus, rather than referencing "a similar policy" as H H Stephens argues, the phrase "Include Automobile Liability" is a general description of the coverage provided under American Resources policy BA22989 — the auto policy.[5]
Moreover, the definition of "underlying insurance" in the umbrella policy forecloses H H Stephens's argument regarding the word "coverage." "Underlying insurance" is defined as "the coverage(s) afforded under insurancepolicies designated in Item 7 of the Declarations." Clearly, the Canal policy is not listed in the column in Item 7 entitled "Carrier and Policy Number." The umbrella endorsement therefore unambiguously excludes Giganti's and Phillips's claims from coverage under the umbrella policy.
 II.
H H Stephens argues that enforcing the umbrella endorsement would render the umbrella policy illusory and would defeat the "reasonable expectations" of a purchaser of an umbrella policy. H H Stephens maintains that this Court's decision in Royal Insurance requires us to disregard the umbrella endorsement. *Page 876 
We disagree. Royal Insurance is distinguishable from the present case. The umbrella insurer in RoyalInsurance, Royal Insurance Company, conceded that Thomas, the driver of the vehicle involved in the accident in that case, was an "insured" under the Royal umbrella policy.[6]
Because Thomas was an "insured" under the Royal umbrella policy, Thomas was not an insured under a separate, "garage" policy issued by Certain Interested Underwriters at Lloyd's of London ("Lloyd's London") because of an exclusion in that policy. 879 So.2d at 1148, 1154. Thus, under the terms of the Royal umbrella policy, Thomas was not covered by "underlying insurance" or "other insurance." 879 So.2d at 1154-55.
The Royal umbrella policy provided coverage only for "`sums in excess of the "retained limit" which the insured becomes legally obligated to pay as damages.'" 879 So.2d at 1148. Where an insured, like Thomas, was not covered by "underlying insurance" or "other insurance," the Royal policy defined the "retained limit" as "`the amount stated in Item 4 of the declarations as the Retained Limit/Each Occurrence.'"879 So.2d at 1148. However, "[i]n Item 4 of the declarations page, `$' with no amount beside it appear[ed] opposite `Retained Limit/Each Occurrence.'" 879 So.2d at 1155.
This Court rejected Royal's argument "that the absence of an amount beside the `$' means that the policy does not cover an insured who does not have `underlying insurance' or other insurance." 879 So.2d at 1155. This Court explained:
 "[T]he Royal policy definition of `insured,' which does not condition coverage by the Royal policy on there being coverage by `underlying insurance' or other insurance, contradicts Royal's argument. Likewise, the very nature of umbrella coverage reveals the fallacy in the argument made by Royal. `Umbrella policies differ from standard excess insurance policies in that they are designed to fill gaps in coverage both vertically (by providing excess coverage) and horizontally (by providing primary coverage).' Commercial Union [Ins. Co. v. Walbrook Ins. Co., 7 F.3d 1047, 1053 (1st Cir.1993) ]. An umbrella policy could not fill a horizontal gap in coverage by providing primary coverage if it provided coverage only for insureds who were covered by underlying insurance. In effect, Royal is arguing that the umbrella policy it issued affords only excess coverage rather than umbrella coverage. However, the designation of the coverage as `umbrella' on the declarations page of the Royal policy forecloses that argument. *Page 877 
 "Because we must interpret insurance policies `to give meaning and effect, if possible, to every word and phrase in the contract' and cannot adopt `a construction which neutralizes any provision,' J. Appleman, Insurance Law and Practice, [§ 4909.85 at 452-53 (1981)], we must interpret the absence of an amount beside the `$' where the amount of the `Retained Limit/Each Occurrence' is to be designated in Item 4 of the declarations page as the expression of an intent to specify that the `Retained Limit/Each Occurrence' was zero when there was no applicable `underlying insurance' or other insurance and that, therefore, the `retained limit' applicable to Thomas under the Royal policy is zero. This interpretation means that the Royal policy affords Thomas primary coverage for [the] claims."
879 So.2d at 1155.
Thus, the issue addressed by this Court in RoyalInsurance was whether the absence of an amount beside "Retained Limit/Each Occurrence" in Item 4 of the declarations of the umbrella policy in that case meant that the Royal policy did not provide coverage. Unlike the present case, this Court in Royal Insurance was not faced with the effect of an unambiguous exclusion in an umbrella policy.Royal Insurance therefore does not stand for the proposition that an unambiguous exclusion from coverage in an umbrella policy is invalid, and the trial court in this case erred in so reading Royal Insurance.
This Court's decision in Greene recognizes that an umbrella policy may exclude coverage for damages arising out of an automobile accident unless the automobile involved in the accident is covered by an underlying insurance policy. InGreene, a vehicle driven by Scott James Vance ("Scott") was involved in a collision in which Greene sustained injuries. Vance Electrical Contractors, Inc. ("VEC"), Scott's employer and the owner of the vehicle driven by Scott, had in effect two insurance policies issued by Hanover Insurance Company and Massachusetts Bay Insurance Company (collectively "Hanover"). The first policy, an automobile-liability policy, "contained an exclusion endorsement . . . that specifically excluded Scott from coverage." 700 So.2d at 1355.
The second policy was an umbrella policy that contained the following exclusion in an endorsement to the policy:
 "`COMMERCIAL UMBRELLA LIABILITY
 "`THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.
 "`FOLLOW FORM-AUTO LIABILITY
 "`This endorsement modifies insurance provided under the COMMERCIAL UMBRELLA LIABILITY COVERAGE FORM.
 "`This insurance does not apply to "bodily injury," "property damage" or "personal injury" arising out of the ownership, maintenance, use or entrustment to others of any "auto."
 "`This exclusion does not apply to the extent that valid and collectible insurance is provided by "underlying insurance," except with respect to limits of insurance or limits of liability.'"
700 So.2d at 1358 n. 5 (capitalization in original).
Greene argued
 "that the general language of the `Excess Insurance' section of the Umbrella Policy provides excess coverage (i.e., coverage in excess of the underlying policy limits) with respect to VEC's employees, including Scott, if the underlying insurance (i.e., Hanover's [automobile-liability policy]) is inapplicable.[4] *Page 878 
Thus, Greene argues that if we hold that the [automobile-liability policy] does not cover Scott, then we must hold that the Umbrella Policy does cover Scott as `excess insurance.
 [4] The Excess Insurance Section of the Umbrella Policy provides:
 "`1. OTHER INSURANCE
 "`This insurance is excess over "underlying insurance" whether or not valid and collectible, or any other valid and collectible insurance which is specifically purchased by the insured as excess insurance over the insurance provided by this policy.'" If there is no "underlying insurance" or valid and collectible insurance available to the insured with respect to an "occurrence" to which this insurance applies, then this policy shall apply as excess over the Retained Limit stated in the DECLARATIONS
except:
 "`. . . .
 "`c. When you fail to maintain "underlying insurance" in accordance with 9. MAINTENANCE OF UNDERLYING INSURANCE in SECTION VI — CONDITIONS.
 `"2. FAILURE TO MAINTAIN "UNDERLYING INSURANCE"
 "`In the event you fail to maintain "underlying insurance" as required in 9. MAINTENANCE OF UNDERLYING INSURANCE in SECTION VI — CONDITIONS, this insurance shall not replace such "underlying insurance" but shall apply as if the "underlying insurance" were valid and collectible'
700 So.2d at 1357-58 (capitalization in original). This Court, however, rejected Greene's argument, stating:
 "This argument misses the point. Regardless of whether the Umbrella Policy coverage takes the form of excess or nonexcess coverage, it is still subject to the Umbrella Endorsement's exclusion for injuries arising from the use of automobiles. The Umbrella Endorsement unambiguously provides that the Umbrella Policy does not cover `"bodily injury," "property damage" or "personal injury" arising out of the ownership maintenance, use or entrustment' of VEC's vehicles."
700 So.2d at 1358 (footnote omitted; emphasis added).[7] *Page 879 
The trial court here did not attempt to distinguishGreene, relying instead on Royal Insurance.Greene recognizes, however, that an unambiguous exclusion in an umbrella policy is enforceable. The unambiguous umbrella endorsement in American Resources' umbrella policy therefore excludes coverage under that policy for Giganti's and Phillips's claims.
Even so, H H Stephens contends that enforcing the umbrella endorsement would violate the reasonable-expectations doctrine. In State Farm Fire Casualty Co. v. Slade,supra, this Court discussed the reasonable-expectations doctrine:
 "The rule (or doctrine) of reasonable expectations of the parties is based on Aetna Casualty Surety Co. v. Chapman, 240 Ala. 599, 200 So. 425 (1941). In Chapman, this Court embraced the following rule of construction:
 "`Policies of insurance being carefully prepared by the insurer, when containing provisions reasonably subject to different constructions, one favorable to the insurer and one favorable to the insured, the construction favorable to the insured shall prevail. As sometimes stated the insured is entitled to the protection which he may reasonably expect from the terms of the policy he purchases.'
"240 Ala. at 602, 200 So. at 426-27. However, theChapman Court also stated:
 "`In giving effect to this rule, it is equally important that the contract made by the parties shall prevail, and no new contract be interpolated by construction.
 "`Provisions clearly disclosing their real intent are not to be given a strained construction to raise doubts where none reasonably exist. No citation of authority need be made in support of these well settled principles.'
 "Id."
Slade, 747 So.2d at 311. The trial court here held that the reasonable-expectations doctrine required that it disregard the umbrella endorsement. The trial court reasoned that enforcing the umbrella endorsement would "negate" the policy's "umbrella character" because, in the trial court's view, the purely excess nature of the endorsement was inconsistent with the purpose of a true umbrella policy. ButGreene makes it clear that "[r]egardless of whether the Umbrella Policy coverage takes the form of excess or nonexcess coverage, it is still subject to the Umbrella Endorsement's exclusion." 700 So.2d at 1358.
The trial court also justified disregarding the umbrella endorsement because the endorsement schedule in the policy states that the policy includes an "Umbrella Coverage Form," but the policy instead contains provisions with the caption "Occurrence Excess Policy." Although this discrepancy might justify a finding of ambiguity in the policy, under the circumstances it does not require that the umbrella endorsement be disregarded.
First, we note that in addition to the "Umbrella Coverage Form," the endorsement schedule also refers to the "Auto *Page 880 
Liability Following Form." Thus, regardless of whether the use of the phrase "Umbrella Coverage Form" in the endorsement schedule created an ambiguity, that same endorsement schedule unambiguously refers the policyholder to the exclusion on which American Resources is relying.Slade, 747 So.2d at 312 ("The State Farm policy at issue here clearly limits its coverage by citing the policyholder to a specific ensuing section of the policy that contains several exclusions from coverage. At least one court has found that such a reference gives the insured reasonable notice of the exclusion." (citing Kane v. Royal Ins.Co., 768 P.2d 678, 684 (Colo. 1989))).
Second, the doctrine of reasonable expectations is not so expansive that any ambiguity in a policy will automatically justify disregarding an unambiguous exclusion in the policy.See Slade, 747 So.2d at 312 ("for the rule of reasonable expectations to apply, there [must] be, as a predicate, doubts as to the real intent of the policy"). InSlade, this Court found that the term "dwelling" in the policy at issue there was ambiguous. 747 So.2d at 309-10. Even so, the Slade Court enforced an unambiguous exclusion in the policy. This Court refused to use the reasonable-expectations doctrine to disregard that exclusion because
 "expectations that contradict a clear exclusion are not `objectively reasonable.' Wellcome v. Home Ins. Co., 257 Mont. 354, 359, 849 P.2d 190, 194 (1993). Such a limit on the doctrine of reasonable expectations is necessary. Otherwise, this Court would be faced with the strong temptation to substitute its notion of equity for the unambiguous terms of a contract and the doctrine could be used to invalidate every policy exclusion. See Millar v. State Farm Fire Cas. Co., 167 Ariz. 93, 97, 804 P.2d 822, 826-27 (Ct.App. 1990), review denied, 168 Ariz. 144, 811 P.2d 1081 (Ariz. 1991) ('If . . . all that was required to defeat the operation of a policy exclusion under the reasonable expectation doctrine was a provision attempting to qualify or limit the scope of policy coverage, then every policy exclusion would be invalid as contrary to the insured's reasonable expectation of coverage.').
 "Accordingly, we conclude that the Slades' expectations of coverage do not require us to construe their policy so as to find coverage. Their expectations were limited by the unambiguous terms of their policy and therefore their expectations of coverage could not be `objectively reasonable.' See Wellcome, supra. Moreover, because we are remanding this case for further proceedings on the issue of coverage, we cannot say that the contract is unconscionable. Unless the terms of an exclusion so narrowly restrict coverage as to render the contract unconscionable, the Legislature, and not the Court, is the proper forum for correction of what some may deem to be an excessively broad exclusion. This is particularly true in a case such as this one, in which the coverage is not mandated by a legislative statement of public policy, such as, for example, the statutory requirement that automobile-liability insurers offer uninsured-motorist coverage. Compare Lambert [v. Liberty Mut. Ins. Co., 331 So.2d 260, 263 (Ala. 1976) ]. Therefore, we hold that the Slades' doctrine-of-reasonable-expectations argument does not provide a basis for finding coverage for the Slades' loss."
747 So.2d at 312.
Thus, regardless of any discrepancy between the "Commercial Umbrella Policy" caption on the title page, the use in the endorsement schedule of the phrase "Umbrella Coverage Form," and the provisions *Page 881 
in the policy captioned "Occurrence Excess Policy," H 
H Stephens could not have reasonably expected — in the face of the unambiguous exclusion in the umbrella endorsement — that the umbrella policy would provide coverage for Giganti's and Phillips's claims.[8]
 Conclusion
The judgment of the trial court is reversed, and a judgment is rendered for American Resources.
REVERSED AND JUDGMENT RENDERED.
NABERS, C.J., and SEE, LYONS, HARWOOD, WOODALL, STUART, and BOLIN, JJ., concur.
PARKER, J., concurs in the result.
[1] Regarding those two policies, the trial court's order states:
 "The Court finds as a matter of law that the language of the Auto policy is unambiguous and, further, that a reasonably prudent person would have understood that the Auto policy does not extend coverage to Giganti's claims. According to the Auto policy, coverage is extended to only specifically designated `autos' listed in the `schedule of covered autos you own,' including replacements of such autos. The auto owned and operated by the insured, H H Stephens, involved in the accident giving rise to this lawsuit is not a scheduled auto listed in the `schedule of covered autos you own.' Moreover, there is no evidence in the record before the Court that the auto is a replacement of one of the autos listed in the `schedule of covered autos you own.' Accordingly, coverage is unavailable to H H Stephens under the Auto policy for the claims made against it in the Giganti lawsuit.
 "The Court finds as a matter of law that the language of the General Liability policy is unambiguous and, further, that a reasonably prudent person would have understood that the General Liability policy does not extend coverage to Giganti's claims. Coverage under the General Liability policy is addressed in the General Liability coverage form, which contains an exclusion that excludes coverage for `"bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured.' `Auto' is defined as `a land motor vehicle, trailer or semi-trailer designed for travel on public roads, including any attached machinery or equipment.' Based upon the clear meaning of such exclusion and definition,. . . . coverage is unavailable to H H Stephens under the General Liability policy for the Claims made against it in the Giganti lawsuit."
H H Stephens did not appeal from those parts of the trial court's order finding that H H Stephens does not have coverage under the auto policy or the general-liability policy for Giganti's and Phillips's claims.
[2] The trial court's order refers both to Phillips's "anticipated claims" and to his "claims" against H H Stephens. In actuality, Phillips had not yet sued H H Stephens at the time of the trial court's order from which American Resources appeals. However, the trial court's order explains that Phillips had notified H H Stephens of his intention to seek recovery from H H Stephens for injuries he sustained in the accident. In addition, briefs to this Court from H H Stephens as appellee and from Phillips as amicus curiae indicate that approximately one month after the trial court's order, Phillips indeed sued H H Stephens. For the sake of simplicity, when discussing whether American Resources is obligated to provide coverage to H H Stephens under the umbrella policy, we refer to Phillips's "claims" rather than to his "anticipated claims."
[3] The trial court did not make its declaratory-judgment order a final judgment under Rule 54(b), Ala. R. Civ. P. We therefore remanded the case to the trial court on January 19, 2006, in accordance with this Court's policy as stated inFoster v. Greer Sons, Inc., 446 So.2d 605, 609
(Ala. 1984), overruled on other grounds by Ex parteAndrews, 520 So.2d 507, 510 (Ala. 1987). On January 26, 2006, the trial court certified its declaratory-judgment order as a final judgment under Rule 54(b), Ala. R. Civ. P. The record has been supplemented to include that Rule 54(b) certification. See Donegal Mut. Ins. Co. v.McConnell, 562 So.2d 201, 203 n. 4 (Ala. 1990).
[4] Paragraph 10 of section V of the umbrella policy states:
 "10. Other insurance
 "If other valid and collectible insurance is available to the insured for `ultimate net loss' we cover under this policy, our obligations under this policy are limited as follows:
 "A. As this insurance is excess over any other insurance, whether primary, excess, contingent or on any other basis, except such insurance as is specifically purchased to apply in excess of this policy's Limit of Insurance, we will pay only our share of the amount of `ultimate net loss', if any, that exceeds the sum of:
 "(1) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and
 "(2) The total of all deductible and self-insured amounts under this or any other insurance.
 "B. We will have no duty under Coverages A or B to defend any `claim' or `suit' that any other insurer has a duty to defend. If no other insurer defends, we may undertake to do so, but we will be entitled to the insured's rights against all other insurers."
[5] As indicated, the trial court held that the auto policy provides no coverage to H H Stephens for Giganti's and Phillips's claims. See supra note 1.
[6] Thomas, a customer of Carl Cannon Chevrolet-Olds, Inc. ("Carl Cannon"), was operating a vehicle Carl Cannon had loaned her at the time of the collision giving rise to the coverage dispute in Royal Insurance. Thus, Thomas met the definition of "insured" in the Royal umbrella policy.879 So.2d at 1146-48. The Royal policy defined an "insured" as follows:
 "`IV. WHO IS AN INSURED
 "`1. If you [Carl Cannon] are designated in the declarations as:
 "`(a) An organization other than a partnership, joint venture or limited liability company, you are an insured. . . .
 "`. . . .
 "`2. Each of the following is also an insured:
 "`. . . .
 "`(d) Any person who has your permission to use an "automobile" owned by, loaned to, or hired for use by you, and any person or organization legally responsible for the use of that "automobile". . . .'"
879 So.2d at 1147-48.
[7] We decline H H Stephens's request to reject or overrule Greene in favor of the decision of the Supreme Court of Louisiana in Futch v. Commercial UnionInsurance Co., 625 So.2d 1019, 1020-21 (La. 1993), in which that court concluded that an endorsement entitled "Automobiles — Limitation of Coverage" was ambiguous. The language of the endorsement in Futch was significantly different from the umbrella endorsement in this case and the endorsement in Greene. The endorsement in Futch stated:
 "It is agreed that, except insofar as coverage is available to the Insured for the full limits of liability as set forth for policies of underlying insurance issued by the Commercial Union Insurance Company, the American Employers' Insurance Company, The Employers' Fire Insurance Company and The Northern Assurance Company of America in Item 3 of the Declarations, this policy shall not apply to the ownership, maintenance, operation, use, loading or un-loading of any automobile."
625 So.2d at 1020-21. The endorsement at issue in the present case, however, is more analogous to the endorsement the Greene Court concluded was unambiguous.
Moreover, our conclusion that the umbrella endorsement is unambiguous is consistent with a decision of the United States District Court for the District of Maryland regarding a similarly worded exclusion in an umbrella policy. InHarleysville Insurance Co. v. Mac's Septic Service,225 F.Supp.2d 595, 598 (D.Md. 2002), the exclusion was entitled "Auto Liability Limitation" and stated that the umbrella policy
 "does not apply to any liability for `bodily injury', `property damage' or `personal injury' arising out of the ownership, maintenance, operation, use, loading or unloading or any `auto' unless the liability is covered by valid and collectible `underlying insurance' as listed in the Schedule of Underlying Insurance, for the full limit shown, and then only for the hazards for which coverage is afforded by `underlying insurance.'"
The district court, applying Maryland law, enforced the exclusion to deny coverage under the umbrella policy at issue.225 F.Supp.2d at 598-99.
[8] As noted, supra, Item 7 of the declarations section of the umbrella policy lists the auto policy as one of the "underlying insurance" policies. H H Stephens concedes that the auto policy covered up to 18 vehicles, all with an operating radius of 50 miles or less. (H H Stephens's brief, p. 17 n. 2.) Thus, the umbrella policy could have applied to claims brought against H H Stephens for damages relating to a number of vehicles, provided those vehicles were covered by the auto policy. This supports our conclusion that enforcing the umbrella endorsement does not render the umbrella policy "illusory."